**VIRGINIA HOSPITAL ASSOCIATION et al., Plaintiffs,**

v.

**Dr. James B. KENLEY, etc., et al., Defendants.**

**Civ. A. No. 76–0300–R.**

United States District Court, E. D. Virginia, Richmond Division.

April 7, 1977.

See also, D.C., 427 F.Supp. 781.

Philip B. Morris, James K. Cluverius, William D. Jones, Browder, Russell, Little, Morris & Butcher, John W. Crews, Thomas F. Hancock, Jr., Crews & Hancock, Richmond, Va., for plaintiffs.

William L. Heartwell, III, V. Anne Edenfield, Legal Aid Society of Roanoke Valley, Roanoke, Va., Herbert Semmel, Joseph N. Onek, Washington, D. C., for plaintiff-intervenors.

Robert T. Adams, Asst. Atty. Gen., Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., Sondra Stigen, Robert P. Jaye, Dept. of HEW, Washington, D. C., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on motion by the plaintiff-intervenors for an award of attorneys' fees to be paid out of a portion of the funds which plaintiff hospitals have or will receive from the state defendants as a consequence of this Court's preliminary injunction issued December 3, 1976 and dissolved January 28, 1977. The background of this litigation has been previously dealt with by the Court in its Memoranda of December 3, 1976 and February 23, 1977. The issues have been briefed by both the plaintiff-intervenors and the plaintiff Virginia Hospital Association, and the matter is now ripe for disposition.

The relevant facts applicable to this motion are as follows: The plaintiffs, Virginia Hospital Association, individual hospitals and Medicaid recipients, instituted this action on July 12, 1976. Plaintiff-intervenors, on behalf of a class of all Medicaid recipients in Virginia, moved to intervene on October 8, 1976. The complaint of plaintiff-intervenors alleged for the first time in this litigation that the state defendants had failed to comply with the notice and hearing requirements under the Social Security Act and its regulations. These allegations were extensively briefed and ably argued by counsel for the plaintiff-intervenors in support of the motion for a preliminary injunction, heard by the Court on November 2, 1976. On December 3, 1976, this Court issued its preliminary injunction enjoining the operation of the 21-day limitation on inpatient hospital care solely by virtue of the failure of the state defendants to comply with the notice and hearing requirements of the federal regulations. The injunction therein entered remained in effect until January 28, 1977, when it was dissolved upon the motion of this Court sua sponte, the state defendants having complied with the notice and hearing requirements. Subsequently, on February 23, 1977, judgment was entered for the defendants. (See Memorandum Opinion under date of February 23, 1977). D.C., 427 F.Supp. 781. As a result of the preliminary injunction, the hospitals received between $11,000 and $15,000 a day from December 3, 1976 until January 28, 1977.[1] The plaintiff-intervenors now seek an award of attorneys' fees from the plaintiff hospitals, contending that as of the result of the preliminary injunction entered by this Court, the plaintiff-intervenors have conferred a benefit on plaintiff hospitals in excess of $600,000 and created a fund for the payment of

---

1. The $11,000 figure comes from the plaintiff hospitals' brief in opposition to motion to suspend injunction pending appeal, filed in the United States Court of Appeals for the Fourth Circuit, and the $15,000 figure emanates from testimony by defense witnesses at trial. See also plaintiffs' exhibit 1 introduced into evidence at trial which alleged an average of $12,758 loss per day as a result of the 21-day limitation.

such benefits. · The plaintiff-intervenors seek an award of "the greater of $25,000 or 10% of the benefit accruing to each hospital."

Although the general rule in the United States has been that attorneys' fees are not ordinarily recoverable as costs, both the courts, through their traditional equity powers, and the Congress, through legislation, have developed exceptions to this rule in particular situations.

One such exception fashioned by the judiciary through a long line of decisions by the United States Supreme Court, is the "common fund-common benefit" rule. *See, e. g.,* *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

In *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court, although rejecting a private Attorney-General theory of recovery of attorneys' fees, reaffirmed the common fund-common benefit theory based on "the historic power of equity to permit . . . a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees from the fund or property itself or directly from other parties enjoying the benefit." *Supra* at 257, 95 S.Ct. at 1621.

The United States Court of Appeals for the Fourth Circuit has also applied the common fund-common benefit doctrine. *Brewer v. School Board of City of Norfolk,* 456 F.2d 943 (4th Cir. 1972). In awarding attorneys' fees to counsel for plaintiffs in the school desegregation case, who had secured a right to free bussing for students assigned to schools beyond walking distance of their homes, the Court stated:

> "The rationale . . . is that it is only fair that he who creates or conserves a common fund or property should be reimbursed for his reasonable expenses, including attorneys' fees, for protecting the common fund for others having a similar interest with him in that fund . . .
>
> The doctrine extends not only to cases in which a fund is either created or protected but also 'where the effect of the suit is the same as though a fund were created.' [Citations omitted] . . .
>
> The purpose of the award in such case, however, is not designed 'as an additional recovery against the wrongdoers, but as a means of ordering compensation to counsel from the class benefited.'" [Citations omitted] *Supra* at 948–949.

In *Mills v. Electric Auto-Lite Co., supra,* the Supreme Court established a three-prong test for determining whether application of the common fund-common benefit exception should be applied. Reimbursement for attorneys' fees is permitted in cases where

> "the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the cost proportionately among them." 396 U.S. at 393–4, 90 S.Ct. at 626.

■ The Court is in agreement with the plaintiff-intervenors that all three requirements of the *Mills* test have been met in the instant case:

(1) A substantial fund or benefit has been produced by the efforts of the plaintiff-intervenors. Plaintiff hospitals will receive monetary benefits in excess of $600,000 as the result of the preliminary injunction issued by this Court solely on the basis of issues successfully raised by the plaintiff-intervenors. With this contention, the plaintiff hospitals are in substantial agreement.

(2) The benefit has been conferred on an ascertainable class. The class of plaintiff hospitals who will receive monetary benefits is easily ascertainable from the Medicaid claims they have filed with the state defendants as a result of the preliminary injunction heretofore referred to. The plaintiff hospitals contend, however, that

the benefited class includes the Medicaid recipients who have derived a benefit from the preliminary injunction. Since there is no indication as to the potential number of this class of beneficiaries, or as to whether there is any convenient means of securing this information, the plaintiff hospitals assert there is no "ascertainable class" among which to apportion the payment of attorneys' fees to counsel for plaintiff-intervenors.

■ The reality of the situation, however, is that the monetary benefits or fund out of which plaintiff-intervenors seek to recover attorneys' fees, benefits the hospitals directly and only indirectly benefits the recipients, who, at least as of the time the preliminary injunction was issued, were not being released from the hospitals after 21 days despite the fact that their Medicaid coverage was terminated.[2] Thus, given the equitable nature of the common fund-common benefit award and the equitable considerations involved herein, it is appropriate that the payment of attorneys' fees be limited to and apportioned among the ascertainable class of plaintiff hospitals.

(3) The Court's subject matter jurisdiction over the fund allows the Court to spread the costs of procuring the benefit among the class. Because the payments of money to the hospitals will be made pursuant to an order of this Court, the Court has sufficient power to make certain all hospitals so benefiting contribute to an award of attorneys' fees in proportion to the benefit which they have received.

Plaintiff hospitals also contend that application of the common fund-common benefit exception is inappropriate in the instant case, since they have been active participants in the litigation throughout all stages of the proceedings and have not been *unjustly enriched* at the expense of the active

parties.[3] In particular, plaintiff hospitals cite *Bradley v. School Board of City of Richmond*, 53 F.R.D. 28 (E.D.Va.1971), rev'd, 472 F.2d 318 (4th Cir. 1972), aff'd on other grounds, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), where this Court declined to apply the common fund-common benefit exception to plaintiffs in a school desegregation case, but rather based the award of attorneys' fees on an alternate theory.

The Court therein discussed the common fund theory as a concept involving the expenditure of a litigant's counsel's fees "in such a manner as to benefit a number of other persons not participating in the suit . . . ." and where "means are available whereby such outside beneficiaries can be made to bear something like a pro rata share of expenses . . . ." *Supra* at 35.

■ Plaintiff hospitals correctly contend that they are neither nonparticipants nor "outside beneficiaries" to this suit. However, this fact alone does not preclude an award of attorneys' fees against them since such an award is based on equitable principles within the Court's discretion, and for the purpose of "compensation to counsel from the class benefited." *Brewer v. School Board of City of Norfolk, supra* at 949.

Premised on the above discussion of the *Mills* criteria for such an award, the Court deems it appropriate to award attorneys' fees to plaintiff-intervenors from plaintiff hospitals, based on their proportionate share of the funds conferred on them through the efforts of the plaintiff-intervenors in securing the preliminary injunction in this case.

■ Turning now to the amount of fees and costs to be awarded, the plaintiff-intervenors seek an award the greater of

---

**2.** Thus, the monetary benefits conferred through the efforts of the plaintiff-intervenors, can be said to have benefited the hospitals, who, were it not for the injunction, would have continued to provide services for needy Medicaid patients despite the 21-day limitation on reimbursement. These costs would not, for the most part, have been recoverable from the

Medicaid patients themselves, who are Medicaid-eligible precisely because they are unable to pay such costs.

**3.** *See, e. g., Hall v. Cole, supra,* 412 U.S. at 5–6, 93 S.Ct. 1943; *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 392, 90 S.Ct. 616.

 

$25,000 or 10% of the benefit accruing to the plaintiff hospitals. Guided by the principle that the purpose of an award under the common fund-common benefit theory is to compensate counsel, an award based on actual work performed rather than a percentage of the benefit conferred, is, in the Court's view, appropriate in the instant case. If the fee were to be based solely on hourly rates, it would come to $11,150 plus an additional $410.25 in out-of-pocket expenses.[4] However, a number of other factors which the Court deems appropriate to take into consideration are: (1) time and skill required and utilized to effectively represent the class; (2) the novelty and difficulty of the questions; (3) the amount involved and the results obtained; and (4) the experience, reputation and ability of counsel. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Clanton v. Allied Chemical Corp.*, 416 F.Supp. 39 (E.D.Va.1976).

Taking the aforementioned factors into consideration, along with the actual number of hours expended, this Court has determined that a reasonable attorneys' fee would be $17,500, including expenses of $410.25.

An appropriate order will issue.

### ORDER

In accordance with the Memorandum of the Court this day filed, and deeming it proper and just so to do, it is ADJUDGED AND ORDERED that:

(1) Plaintiff-intervenors are awarded attorneys' fees and costs under the common fund-common benefit doctrine in the sum of $17,500.

(2) The attorneys' fees awarded hereunder shall be paid out of the funds paid by state defendants to plaintiff hospitals; each plaintiff hospital shall be assessed an amount proportionate to the benefit received by each such hospital to the total benefit received by all plaintiff hospitals.

(3) The plaintiff, Virginia Hospital Association, shall submit to the Court within thirty (30) days of this date a schedule of their member hospitals reflecting each hospital's proportionate share of the fees herein awarded.

(4) The plaintiff, Virginia Hospital Association, shall file with this Court a certificate to the effect that they have notified each of said hospitals of the contents of this Order.

(5) This Court reserves jurisdiction of this cause for the purpose of entering an appropriate judgment upon submission by the Virginia Hospital Association of the listings heretofore referred.

Let the Clerk send a copy of this Order and the accompanying Memorandum to all counsel of record.

---

4. These figures are premised on affidavits submitted by counsel for plaintiff-intervenors.