**Bruce D. McARTHY, Plaintiff,**

v.

**DISTRICT LODGE NO. 9, I.A.M.A.W., a labor organization, et al., Defendants.**

**No. 66 C 66(2).**

United States District Court
E. D. Missouri, E. D.

Feb. 18, 1966.

Jerome J. Duff, St. Louis, Mo., for plaintiff.

Donald Siegel, Bartley, Siegel & Bartley, Clayton, Mo., for defendants.

MEREDITH, District Judge.

This matter is pending upon defendants' motion to dismiss. The Court has been fully advised by briefs and oral argument.

Plaintiff, in a complaint filed February 10, 1966, attacks the action of defendants in declaring plaintiff and twenty-two similarly situated parties to be ineligible as candidates for offices in District No. 9, International Association of Machinists and Aerospace Workers (hereinafter referred to as I.A.M.A.W.).

Plaintiff is alleged to be a member in good standing of Local Lodge No. 837, which is affiliated with District No. 9 of the I.A.M.A.W. Under the by-laws of District No. 9, proceedings commenced in January 1966 for the election of a directing business representative and twenty-two business representatives. Plaintiff alleges he was validly nominated for the office of directing business representative in a nominating election held by Local No. 837 on January 11, 1966. Notice of this nomination was published in the St. Louis Labor Tribune, traditionally recognized by District No. 9 as the designated vehicle for official news about District No. 9, on January 20, January 27, and February 3, 1966. Plaintiff alleges that notice of his nomination and a letter accepting nomination were submitted to the district office prior to February 5, 1966, as provided in the by-laws. However, on February 9, 1966, at a meeting of the District No. 9 Board of Delegates, defendant Krausz, incumbent recording secretary of District No. 9, announced that a "letter of nomination" had not been received from Local No. 837. Thereafter, defendant Becker, president of District No. 9, announced that plaintiff and the other candidates nominated by Local No. 837 were officially disqualified because of failure to comply with the by-laws. Following an objection from the floor, a vote of the attendees at said meeting affirmed the order of defendant Becker and defendant Krausz thereupon entered the order of disqualification into the official records of District No. 9.

Plaintiff contends his nomination complies in all respects with the provisions of the by-laws of District No. 9 and that the action of defendants is an illegal attempt to deprive plaintiff of his valuable rights as a bona fide candidate. Accordingly, plaintiff has brought this suit under 29 U.S.C. § 481 seeking the issuance of a show cause order and, upon return, the issuance of an injunction enjoining said defendants from taking any action on the basis of the order of disqualification, ordering said defendants to

restore plaintiff's name as a bona fide candidate, enjoining said defendants from in any way infringing upon or interfering with the candidacy of plaintiff, and other appropriate relief.

An order to show cause was issued, returnable before this Court at 11:00 a. m., on February 18, 1966. Defendant, by motion to dismiss, asserts that this Court lacks jurisdiction of the subject matter of this complaint, that the complaint fails to state a claim upon which relief can be granted, that plaintiff has failed to allege exhaustion of intra-union remedies, that plaintiff has failed to allege exhaustion of the administrative remedies provided in 29 U.S.C. § 482, that plaintiff has an adequate remedy at law, and that plaintiff has no standing or right to bring suit for himself or for other unknown persons for the matters alleged in the complaint. We consider only the question of jurisdiction.

Disposition of this matter turns on application of Title IV, Elections, § 401 et seq., of the Labor Management Reporting and Disclosure Act (L.M.R.D.A.), 29 U.S.C. § 481, et seq. Plaintiff contends that this Court has jurisdiction under Title IV. We cannot agree.

■ Numerous recent decisions have dealt with the question of judicial relief under the L.M.R.D.A. The problem engendering these controversies is that while § 481 establishes safeguards and substantive rules regarding union elections, at the same time § 482 imposes an administrative channel for enforcement of these rights and duties which must be exhausted. The relief afforded by § 482 is limited in several ways. First, it is of a post-election nature; it can only be invoked after the election has been conducted. Second, it places the right to institute judicial action in the Secretary of Labor. Third, judicial relief is available only if the Court finds that the violations complained of may have affected the outcome of the elections. Naturally, the aggrieved candidate desires to secure relief prior to the election. The plaintiff here, for instance, alleges the establishment of a large-scale campaign organization entailing substantial expenditures. Generally, litigants have tried two approaches to obtain pre-election relief in the federal courts.

■ The first approach was an effort to construe the acts complained of as violations of Title I of the L.M.R.D.A., the "Bill of Rights" section, 29 U.S.C. 401, et seq. Judicial relief is available for violation of § 401 rights. 29 U.S.C. § 402. In Harvey v. Calhoon, 324 F.2d 486 (2 Cir. 1963), it was held that allegations as to acts which, in their primary significance, related to eligibility of candidates also created an issue as to nomination rights, protected by § 401, over which the federal court would have jurisdiction under § 402. The Supreme Court reversed, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), reh. den. 380 U.S. 901, 85 S.Ct. 878, 13 L.Ed.2d 793, holding that jurisdiction under § 402 cannot be upheld by reliance in whole or in part on allegations which in substance charge a violation of Title IV rights.

■ The second approach, and that contended for by plaintiff, is that § 481 supports jurisdiction under the facts of this case. The premise of this argument is that the exclusive remedy provision of § 482 refers only to attacks upon elections already conducted; that it does not prohibit pre-election judicial relief in the federal courts to preserve and enforce the fair election requirements of § 481(c) and the § 481(e) requirement that "[t]he election shall be conducted in accordance with the constitution and bylaws of such organization * * *." Section 483 is said to support this position:

"* * * Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."

Section 483 was carefully considered in Colpo v. Highway Truck Drivers and Helpers, 201 F.Supp. 307 (D.Del.1961), vacated as moot 305 F.2d 362 (3 Cir. 1962), cert. den. 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962). The Court there concluded, after a searching examination of the legislative history, that § 483 had reference to existing rights and remedies under state law. This provision was added following the deletion of language which would have preempted existing rights and remedies under state law. The rights plaintiff seeks to invoke here are those created by § 481. He has alleged no pre-existing substantive rights under federal law which would support federal jurisdiction under 28 U.S.C. §§ 1331 or 1337. The comprehensive and careful detailing of remedies under the L.M.R.D.A. rules against any contention that a federal district court might have primary pre-election jurisdiction of § 481 issues under the general jurisdiction statutes, 28. U.S.C. §§ 1331 and 1337. If there was ever any doubt about this, the Supreme Court's holding in the *Harvey* case, supra, should dispel such:

> "Title IV sets up a statutory scheme governing the election of union officers, fixing the terms during which they hold office, requiring that elections be by secret ballot, regulating the handling of campaign literature, requiring a reasonable opportunity for the nomination of candidates, authorizing unions to fix 'reasonable qualifications uniformly imposed' for candidates, and attempting to guarantee fair union elections in which all the members are allowed to participate. *Section 402 of Title IV, [29 U.S.C. 482], as has been pointed out, sets up an exclusive method for protecting Title IV rights,* \* \* \* It is apparent that Congress decided to utilize the special knowledge of the Secretary of Labor in order best to serve the public interest. [citation deleted] *In so doing Congress, with one exception not here relevant,*[13] *decided not to permit individuals to block or delay union*

*elections by filing federal-court suits for violation of Title IV.* Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts. Without setting out the lengthy legislative history which preceded the passage of this measure, it is sufficient to say that *we are satisfied that the Act itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title.*" (379 U.S. 134, 140 and 141, 85 S.Ct. 292, 296.) (Parenthetical material and emphasis added.)

Footnote 13 made reference to the provision in § 481(c) permitting a bona fide candidate to bring suit in the district court to enforce his right to equal treatment in the distribution of campaign literature and access to membership lists. Justice Stewart, who concurred on a different ground, disagreed with the action of the majority in construing Title IV so as "to foreclose absolutely pre-election litigation in the federal courts \* \* \*." (l.c. supra, at 146, 85 S.Ct., at 299). This serves merely to highlight the force of the Court's holding.

It is to be emphasized that the *Harvey* case concerned a *pre-election* situation. Thus, plaintiff's attempted differentiation between pre-election and post-election cases clearly has no merit. See also: Jackson v. International Longshoremen's Ass'n, 212 F.Supp. 79 (E.D.La. 1962), and Boling v. International Brotherhood of Teamsters, 224 F.Supp. 18 (E. D.Tenn.1963). Plaintiff has called our attention to the recent case of Wirtz v. Local 30, Int'l Union of Operating Eng.,

242 F.Supp. 631 (S.D.N.Y.1965). That case may establish, as plaintiff contends, that the defendants here have wrongfully interfered with plaintiff's rights under the statute. But, that case does not deal with the jurisdictional question here presented.

All parties here are citizens of Missouri and there is no contention of jurisdiction by virtue of diversity of citizenship nor is there any contention of the enforcement of any rights granted under the state laws.

Accordingly, an order will be entered dismissing this cause for lack of jurisdiction of the subject matter.