Joseph **RODONICH**, Alex **Chotowicky**, **Wasyl Lawro** and Harry **Diduck**, Plaintiffs,

v.

**HOUSE WRECKERS UNION, LOCAL 95 OF LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,**

Laborers' International Union of North America, et al., Defendants.

No. 82 Civ. 5583 (JMC).

United States District Court, S.D. New York.

Nov. 1, 1993.

Wendy Sloan, Hall & Sloan, New York City, for plaintiffs.

Edward J. Groarke, Colleran, O'Hara & Mills, Garden City, NY, for defendant Local 95.

Michael Barrett, Theodore T. Green, and Laurence E. Gold, Connerton, Ray & Simon, Washington, DC, for defendant Laborers' Intern. Union.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Plaintiffs' motion for substitution of Edward T. Markunas, executor of the estate of Harry Diduck, as party plaintiff in place of the deceased Harry Diduck is granted. Fed. R.Civ.P. 25(a). Plaintiffs' motion for attorneys' fees and costs is denied.

## BACKGROUND

The plaintiffs, Joseph Rodonich, Alex Chotowicky, Wasyl Lawro, and Harry Diduck, seek an award of attorneys' fees against the Laborers' International Union of North America ("LIUNA"), and costs against both LIUNA and House Wreckers Union Local 95 of Laborers' International Union ("Local 95") in connection with their prosecution of the instant action.

Plaintiffs commenced suit against LIUNA, Local 95, and individual defendants on August 23, 1982 in the Southern District of New York. In their complaint plaintiffs alleged that the defendants engaged in a scheme to suppress dissent within Local 95 and unlawfully disciplined them in violation of sections 101(a)(1), (2), (5), 609 and 610 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(1), (2), (5), 529, 530 (1982) ("LMRDA"), section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982) ("LMRA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (1982) ("RICO"), and LIUNA's constitution.

Prior to trial, the Court granted LIUNA summary judgment on plaintiffs' claim that LIUNA breached its constitution in contravention of § 301(a) of the LMRA, dismissing the state law contract claim as preempted by federal labor law. *See* Rodonich v. House Wreckers Union Local 95 of Laborers' International Union of North America, 624 F.Supp. 678 (S.D.N.Y.1985). Following trial, the jury returned a verdict in favor of plaintiffs Rodonich, Chotowicky, and Lawro against Local 95, and entered final judgment in accordance therewith on March 14, 1986. The Court entered final judgment dismissing plaintiffs' claims against LIUNA and dismissing all claims of plaintiff Diduck. Diduck's motion for judgment notwithstanding the verdict was denied by the Court on May 21, 1986. *See* Memorandum and Order, 82 Civ. 5583 (JMC) (S.D.N.Y. May 21, 1986). Plaintiffs appealed the dismissal of their claims against LIUNA. LIUNA, Local 95, and the individual defendants cross-appealed from the judgment.

On appeal, the Second Circuit affirmed the dismissal of all claims against LIUNA, except those asserted by Diduck. *See Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 970 (2d Cir.1987). The Second Circuit reversed the dismissal of the complaint as to Diduck, and remanded the case to the district court for entry of a directed verdict in favor of Diduck both as against Local 95 and LIUNA, and for further proceedings on the issue of damages. *See id.*, at 976. The Second Circuit affirmed the district court's decision as to LIUNA's cross-appeal regarding the statute of limitations, and plaintiffs' claim regarding the instruction on emotional distress. *See id.* at 976–78.

The Court approved a settlement of Diduck's claims on July 5, 1989, pursuant to which LIUNA agreed to immediately pay Diduck $20,000, and Local 95 agreed to pay an additional $20,000 within six months. Diduck's motion for sanctions and post-settlement interest based on untimely payment of the settlement proceeds was denied by the Court on July 8, 1991. *See* Memorandum and Order, 82 Civ. 5583 (JMC) (S.D.N.Y. July 8, 1991). Plaintiffs' motion for declaratory and injunctive relief was also denied by the Court. *See id.* Plaintiffs' motion for reargument of their application for equitable relief was denied by the Court on March 3, 1992. *See* Memorandum and Order, 82 Civ. 5583 (JMC) (S.D.N.Y. Mar. 3, 1992).

## DISCUSSION

### I. Substitution of Edward T. Markunas

Plaintiffs move to substitute Edward T. Markunas, executor of the estate of Harry Diduck, as party plaintiff pursuant to Rule 25(a) of the Federal Rules of Civil Procedure. The motion is unopposed. *See* Letter to the Court from Michael Barrett, dated July 26, 1993.

■ The survivorship of federal labor law claims is a matter of federal law. *See Mallick v. International Brotherhood of Electrical Workers*, 814 F.2d 674, 676 (D.C.Cir. 1987). The District of Columbia Circuit Court of Appeals, in deciding the survivorship of a claim brought under section 201 of the LMRDA, observed that the federal courts "should formulate a federal rule of

decision that best serves the goals which underlie the federal right of action itself." *Id.*, at 677. The court reasoned that a federal court in deciding survivorship must strive to implement the will of Congress. *See id.* The Court identified deterrence as the goal underlying union member suits under section 201. *See id.* The court reasoned that the rights inhering in Title II—the right of union member access to full information concerning union financial and administrative practices and procedures—were rights shared equally by all union members, and thus enforceable by any of the union members. *See id.*, at 677–78. Therefore, the court noted, the identity of the particular plaintiff suing under section 201 was of no import, as the same duty was owed by the union to all of its members. *See id.*, at 678. Accordingly, the court permitted substitution of other union members as plaintiffs. *See id.*, at 679.

■ In enacting Title I, Congress intended "to curb the autocratic rule of some union leaders by assuring union members of equal rights to participate in union affairs and the rights to speech and assembly and by preventing suppression of these rights through abuse of the union's disciplinary powers." *Rosario v. Amalgamated Ladies Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228, 1239 (2d Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). In the Court's view, such purpose is furthered through survivorship of Diduck's claim brought pursuant to section 102 of the LMRDA.

Federal Rule of Civil Procedure 25(a) provides for substitution of proper parties by the court when a party dies and his claim survives his death. The Court grants plaintiffs' motion to so substitute Edward T. Markunas in place of the deceased Harry Diduck.

## II. *Motion for Attorneys' Fees and Costs*

Plaintiffs contend that they are entitled to attorneys' fees and costs [1] under the common benefit doctrine. Defendant asserts that attorneys' fees are not justified under a common benefit theory since plaintiffs were not prevailing parties,[2] and moreover, failed to render a substantial benefit to the membership of the international union through their prosecution of the instant suit.

■ The common benefit doctrine is an equitable exception to the prohibition against the shifting of attorneys' fees. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). It has its origins in the common fund theory, a device whereby courts permitted the creator of a common fund to seek reimbursement for his attorneys' fees from the beneficiaries who participated in the proceeds of the fund without contributing to the cost of the litigation. *See id.* The common fund doctrine, the purpose of which was to prevent the unjust enrichment which would result from the participation in the proceeds of a fund by persons who did not incur litigation costs, may thus be characterized as a restitutionary rule. *See id.*

In *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the United States Supreme Court extended this rationale to allow fee-shifting where a suit vindicated a common interest through the conferral of a benefit, as opposed to the preservation, increase, or procurement of a fund. *See Hall v. Cole,* 412 U.S. 1, 5–6 n. 7, 93 S.Ct. 1943, 1946–1947 n. 7, 36 L.Ed.2d 702 (1973). The plaintiffs in *Mills* sued under section 14(a) of the Securities Exchange Act of 1934 to establish the liability of the defendant corporation for an unlawful merger.[3]

1. Plaintiffs' entitlement to costs is also dependent upon application of the common benefit doctrine, and thus, for purposes of this motion, any reference to "attorneys' fees" and entitlement thereto is a reference to entitlement to costs as well.

2. Defendant admits that plaintiff Diduck prevailed on his claim for wrongful affirmance of the discipline imposed on him by Local 95. *See* Defendant's Memorandum of Law in Opposition

to Plaintiffs' Application for Attorneys' Fees, 82 Civ. 5583 (JMC), at 5.

3. At the time the Supreme Court opinion was rendered, the mode of relief, whether damages or the nullification of the merger, had not yet been determined by the District Court since the appeal involved the appropriate proof of causation under section 14(a). *See Mills,* 396 U.S. at 389, 90 S.Ct. at 624. In the LMRDA common benefit case, unlike a derivative suit which by its very nature is on behalf of a group that equally

The *Mills* Court held that attorneys' fees were recoverable by the prevailing plaintiffs "where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills*, 396 U.S. at 393–94, 90 S.Ct. at 626.

In *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702, the United States Supreme Court expressly sanctioned use of the common benefit doctrine in suits brought pursuant to section 102 of the LMRDA. *See id.* at 9, 93 S.Ct. at 1948. The plaintiff in *Hall* was expelled from the union due to an alleged violation of a union rule prohibiting "deliberate or malicious vilification with regard to the execution or the duties of any office or job." *Id.*, at 3, 93 S.Ct. at 1945. The district court made a finding that the plaintiff's free speech rights delineated in section 101(a)(2) of the LMRDA had been infringed, and accordingly, ordered the plaintiff permanently reinstated and awarded attorneys' fees, although denying plaintiff's damages claims. *See id.* The Supreme Court affirmed the award of attorneys' fees, reasoning that

> When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the 'chill' cast upon the right of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial "not only in the immediate impact of the results achieved but in their implica-

tions for the future conduct of the union's affairs." (quoting *Yablonski v. United Mine Workers of America*, 466 F.2d 424, 431 (D.C.Cir.1972)).

*Id.* at 8, 93 S.Ct. at 1948.

### A. Claims of Rodonich, Chotowicky, and Lawro

■ Plaintiffs Rodonich, Chotowicky, and Lawro did not prevail on their scheme to suppress claims against LIUNA, and accordingly, are not entitled to attorneys' fees under *Hall.* As the Ninth Circuit in *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463 (9th Cir.1992), held:

> No fee-shifting is necessary, however, when a union successfully defends against a member's claim for relief under the LMRDA, because the dues-paying union members, who are the beneficiaries of the litigation, are already bearing the cost. Were plaintiffs to be assessed attorneys' fees, the costs would be shifted *away* from the common beneficiaries.

*Id.*, at 1479.

Plaintiffs seek to circumvent the prevailing plaintiff requirement by contending that their prosecution of the suit conferred a benefit upon the membership of the international union through the establishment of a new legal theory governing the liability of a parent international union for affirming a local union's violations of the LMRDA.

A similar argument was explicitly rejected by the United States Supreme Court in *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).[4] The *Hewitt* Court held that a favorable statement of law was not the informal equivalent [5] of a judicial pronounce-

---

benefits from the suit, the mode of relief is critical to establishing whether a substantial benefit has been conferred by the plaintiff's suit. *See infra.*

4. In *Hewitt*, the plaintiff brought suit under 42 U.S.C. § 1983, alleging violation of his due process rights. *See Hewitt*, 482 U.S. at 757, 107 S.Ct. at 2674. The District Court granted summary judgment for the defendants on the constitutional claims. *See id.*, at 757–58, 107 S.Ct. at 2674–75. The Third Circuit reversed with instructions to enter summary judgment unless the defendants could establish a qualified immunity defense. *See id.* at 758, 107 S.Ct. at 2675. After

further appeal of one of the constitutional claims to the Supreme Court, the District Court granted summary judgment for all the defendants on the basis of qualified immunity. *See id.* The decision was affirmed by the Third Circuit. *See id.* at 759, 107 S.Ct. at 2675. The plaintiff then sought attorneys' fees under section 1988. *See id.* The plaintiff contended that the judicial statement that his constitutional rights were violated was the informal equivalent of declaratory relief. *See id.*

5. For example, a plaintiff who obtains a monetary settlement or whose suit causes the defendant to alter the conduct giving rise to the action

ment, and thus, did not suffice to render the plaintiff a prevailing party. *See id.*, at 761, 107 S.Ct. at 2676. The Supreme Court reasoned that a plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." *Id.*, at 760, 107 S.Ct. at 2672. Additionally, to equate statements of law with declaratory relief would "deprive[ ] the defendant of valid defenses to a declaratory judgment to which he is entitled." *Id.*, at 762, 107 S.Ct. at 2677.

Thus, plaintiffs' contention that the creation of a new standard of liability for parent international unions serves as a surrogate for the prevailing plaintiff requirement is without merit, and the request for attorneys' fees attributable to services performed in connection with the unsuccessful prosecution of the claims of Rodonich, Chotowicky, and Lawro as against LIUNA, is denied.

### B. *Claims of Plaintiff Diduck*

Plaintiff Diduck prevailed on appeal to the Second Circuit and thus meets the first prong for invoking the common benefit doctrine. Plaintiff claims that the vindication of his rights under section 102 of the LMRDA conferred a substantial benefit upon the membership of the international union. Defendant counters that plaintiff failed to render a substantial benefit upon the LIUNA membership since any benefit bestowed was merely incidental to damages Diduck received as compensation for his personal injuries, and further, plaintiff failed to demonstrate that his success "dispel[led] a chill" upon the union membership.

In *Shimman v. International Union of Operating Eng. Local 18*, 744 F.2d 1226 (6th Cir.1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985), the defendant union was held liable under section 101(a) of the LMRDA. *See id.* at 1228. The plaintiff recovered compensatory and puni-

tive damages for his personal injuries,[6] but no equitable relief. The plaintiff in *Shimman* argued that an award of attorneys' fees under the common benefit doctrine was proper since his suit "end[ed] oppression of dissident members and restor[ed] union democracy." *Id.* at 1234. The Sixth Circuit held that the common benefit doctrine did not apply to the case,[7] reasoning that any incidental benefit produced by the plaintiff's suit, the purpose of which was to redress his personal injuries, would "not justify a fee award . . . in light of the requirement that the fee award operate so as to impose the burden in proportion to the benefits received." *Id.*, at 1235; *see also Guidry v. International Union of Operating Eng., Local 406*, 882 F.2d 929, 944 (5th Cir.1989), *cert. granted and judgment vacated on other grounds*, 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603 (1990) (common benefit theory unavailable to plaintiffs awarded damages only). Since the purpose of the doctrine was to shift the cost of litigation to the class that benefitted, and who would have had to pay had they brought suit, such purpose could not be achieved in *Shimman*, the court observed, as other union members could not have sued to redress the plaintiff's personal injuries. *See Shimman*, 744 F.2d at 1235. In the absence of an injunction, the benefits conferred upon the other union members "were achieved not by direct operation of the judgment, but rather were the result of a realization that the union would have to reform itself or risk exposure to further liability." *Id.* at 1235 n. 13. The court observed that permitting a fee award based on such benefits would equate the doctrine with the private attorney general approach rejected by the United States Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).[8] *See Shimman*, 744 F.2d at 1235 n. 13.

---

**6.** Shimman recovered $107,067.99 in compensatory damages and $145,000.00 in punitive damages, as modified on appeal. *See Shimman*, 744 F.2d at 1235.

is deemed a "prevailing party" since he has "obtained the substance of what he sought," that is, the informal equivalent of a judicial pronouncement. *See Hewitt*, 482 U.S. at 761, 107 S.Ct. at 2676.

**7.** Since the court held that the common benefit exception was inapplicable, it did not reach the question of whether it constituted a substantial benefit for purposes of the common benefit doctrine. *See Shimman*, 744 F.2d at 1234.

**8.** *Alyeska* was a suit by environmental groups seeking to prevent the issuance of permits by the Secretary of the Interior that were required for the construction of the Alaska Pipeline. *See*

In *Murphy v. International Union of Operating Engineers, Local 18,* 774 F.2d 114 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986), the plaintiff sued under Title I of the LMRDA. The district court awarded the plaintiff compensatory and punitive damages,[9] and granted injunctive relief requiring the union to cease discrimination against the plaintiff in its work referral system, to permit the plaintiff to exercise his rights to participate in union activities, to expunge records relating to his disciplinary hearing and conviction, and to enact such measures as necessary to ensure the fairness of the union's work referral system. *See id.,* at 119. The Sixth Circuit held that the plaintiff was entitled to an award of attorneys' fees under the common benefit doctrine. *See id.* at 127. The court distinguished *Murphy* from *Shimman* on two bases. First, no injunctive relief was ordered in *Shimman.* Second, the plaintiff in *Shimman* received a punitive damages award that exceeded in amount his request for attorneys' fees. *See id.* In contrast, the plaintiff in *Murphy* faced "significant financial loss for litigating a suit that resulted in substantial benefit to the Union as a whole." *Id.*

In *Aguinaga v. United Food and Commercial Workers International Union,* 993 F.2d 1480 (10th Cir.1993), a hybrid breach of contract/duty of fair representation[10] suit under section 301 of the LMRA, the Tenth Circuit held that benefit commonality and the assessment of attorneys' fees in proportion to the benefits conferred were requirements of the common benefit doctrine. *See id.,* at 1483–84. The court defined benefit commonality as a shared mutual benefit, or at least the receipt of some benefit in common. *See id.,* at 1483. This requirement was not met in *Aguinaga,* since union members could not share in plaintiff's four million damages award, nor could the plaintiff necessarily share in the effect of the suit on the union's future conduct, since the judgment did not guarantee the plaintiff union membership. *See id.*

The *Aguinaga* court's second requirement, that the fees be assessed in proportion to the benefits received, emanated from the language in *Mills* that the doctrine applied "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs *proportionately* among [those benefitting]." *Id.,* at 1484 (quoting *Mills,* 396 U.S. at 393–94, 90 S.Ct. at 626). This element was also

---

*Alyeska,* 421 U.S. at 241, 95 S.Ct. at 1613. The Court of Appeals awarded the plaintiffs attorneys' fees based upon the inherent equitable power of the court and on the theory that plaintiffs deserved fees for "performing the services of a 'private attorney general.'" *Id.* In denying fees based upon the common benefit doctrine, the Court of Appeals noted that "'this litigation may well have provided substantial benefits to particular individuals and, indeed, to every citizen's interest in the proper functioning of our system of government. But imposing fees on Alyeska will not operate to spread the costs of litigation proportionately among these beneficiaries.....'" *Id.* at 245, n. 14, 95 S.Ct. at 1615 n. 14 (quoting *Wilderness Society v. Morton,* 495 F.2d 1026, 1029 (D.C.Cir.1974)). Ultimately, the Supreme Court repudiated the use of the private attorney general theory. *See id.,* 421 U.S. at 271, 95 S.Ct. at 1628. In dissent, Justice Marshall stated that there is a "far from bright line between common benefit and public benefit." *Id.* at 277–78, 95 S.Ct. at 1631 (Marshall, J., dissenting). Justice Marshall further observed that "the Court is willing to tolerate the 'equitable' exceptions to its analysis, not because they can be squared with it, but because they are by now too well established to be casually dispensed with." *Id.* at 278, 95 S.Ct. at 1632 (Marshall, J., dissenting).

9. The punitive damages award was later vacated by the court in a post-trial order.

10. In a duty of fair representation suit, two disparate awards of attorneys' fees are often at issue. The first are the fees incurred by the union member in seeking resolution of his claim against the employer. These fees are recoverable as consequential damages in the union member's suit against the union for breach of the duty of fair representation, since "[a]bsent the alleged breach of that duty, [the plaintiff] would not have been required to retain an attorney in order to pursue his contractual remedies against [the employer]" *Ames v. Westinghouse Elec. Corp.,* 864 F.2d 289, 293 (3rd Cir.1988). Thus, "[t]he expenses a plaintiff incurs in obtaining legal representation and pursuing a contractual matter against his employer [are] not merely the result of the harm the union did him by its failure to fairly represent him; it is the harm itself." *Volkman v. United Transp. Union,* 770 F.Supp. 1455, 1475 (D.Kan.1991). The second fees are those incurred by the union member in bringing suit against the union. These fees must be justified under one of the exceptions to the American Rule. *See Ames,* 864 F.2d at 293.

lacking since "[p]laintiffs received significant money damages, while the union members received only the incidental benefit of potentially improved future treatment by the union." *Id.,* at 1484–85.

The Second Circuit has not yet held that proportionality and benefit commonality are requirements of the common benefit doctrine, although implicit in decisions such as *Mills* are the concepts that the benefit rendered upon the class of beneficiaries be commensurate to the benefit bestowed upon the individual plaintiff, and that the benefit be held in common by the plaintiff and the beneficiaries among whom the fee is being equitably apportioned. These requirements are also in harmony with the unjust enrichment rationale which underlies the development of the common benefit doctrine. *See Aguinaga,* 993 F.2d at 1483.

■■■ An analysis of the case law that has been discussed reveals three distinct situations in which the common benefit doctrine is implicated. A case in which equitable relief alone is awarded satisfies the benefit commonality and proportionality requirements. In a case in which damages alone are awarded, benefit commonality is absent, for any general deterrent effect the damages award may have is incidental to the plaintiff's recovery, and the damages award is not held in common by the plaintiff and the union membership. In a case in which both equitable relief and damages are awarded, the requirements of benefit commonality and proportionality are supported by the equitable relief; a further award of damages does not negate the aforementioned established requirements.[11]

■■■ Courts in this circuit that have applied *Hall* in suits under Titles I and IV of the LMRDA have done so in cases in which equitable relief alone, or a combination of equitable relief and damages, have been awarded. In *Rosario v. Amalgamated Ladies Garment Cutters' Union, Local 10, I.L.G.W.U.,* 605 F.2d 1228 (2d Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), a suit under Title I of the LMRDA, the court permanently enjoined the

local union from following certain disciplinary procedures, and awarded the plaintiff compensatory and punitive damages. *See id.,* at 1233. The Second Circuit held that "a plaintiff who vindicates procedural rights under § 101 may, in the discretion of the court, be entitled to recover attorney's fees." *Id.* at 1246. The court reasoned that "whether or not appellees' suit served as an antidote to autocracy, it did confer a benefit upon the general membership by insuring that other Union members charged with violations of the Union's rules would be accorded the procedural rights upheld by us." *Id.; see also Donovan v. CSEA Local Union 1000, American Fed. of State, County and Municipal Employees, AFL–CIO,* 784 F.2d 98, 102 (2d Cir.), *cert. denied,* 479 U.S. 817, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986) (court awarded fees under common benefit doctrine to plaintiff-intervenor in Title IV suit seeking declaration that defendant-union failed to use secret ballots in contravention of section 401(b), and that its nominating procedures were violative of section 401(e)); *Goldberg v. Hall,* 1988 WL 215393, at *5 (S.D.N.Y. July 28, 1988), *aff'd,* 873 F.2d 1435 (2d Cir.1989) (attorneys' fees awarded to plaintiff who sought preliminary injunction under Title I blocking his removal from office and directing reinstatement for the remainder of his term, where committee on appeals of union adopted resolution rejecting his removal, thereby mooting motion for preliminary injunction); *Ostrowski v. Utility Workers Union of Am., Local 1–2, AFL–CIO,* 1980 WL 2183, at *1–*2 (S.D.N.Y. Dec. 29, 1980) (attorneys' fees awarded to plaintiffs granted permanent injunctive relief by settlement ordering reinstatement and restraining union from disciplining plaintiffs for exercising rights secured by LMRDA). Clearly, the benefits in these cases redounded to the entire union membership. In contrast, Diduck received only damages for his personal injury, and did not render a benefit upon LIUNA as a whole.

The Sixth Circuit in *Murphy* pinpointed two bases underlying the *Shimman* result. The first element, the absence of equitable relief, is present here. The second, the receipt of damages in excess of the attorneys'

---

11. *Murphy,* 774 F.2d at 119, implicitly supports this premise.

fees requested, is not. However, the Sixth Circuit in *Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461 (6th Cir.1992) applied *Shimman* in a case in which the plaintiff received no equitable relief and compensatory and punitive damages in the amount of $40,000.[12] *See id.*, at 1472. The plaintiff in *Ryder* asserted that he was entitled to attorneys' fees since his suit under Title I "helped to rid the union of corruption and restore democracy." *Id.* The Sixth Circuit affirmed the district court's holding that "the incidental benefits did not operate to impose the burden of litigation in proportion to the benefits received." *Id.*

In the Court's view, in a suit under section 102 of the LMRDA, the "benefit" identified in *Hall* is restricted to the concrete benefits that flow from an award of equitable relief alone or in combination with damages. To sanction fee-shifting based on a general deterrence rationale is a back-door endorsement of the private attorney general approach. The positive effect on union democracy of a suit under the LMRDA, as envisioned by *Hall*, includes the vindication of both "private" and "public" rights through equitable relief; reinstatement of a union member as illustrative of the former, and the abolition of an oppressive union rule as an example of the latter. An equitable judgment or its substitute[13] has a direct impact on the defendant union's behavior. A defendant made to pay damages, unlike the defendant who must reform its behavior due to an equitable decree, is not under any legal compulsion to modify its behavior in accord with a judgment.

The *Hall* Court's articulation of *Mills* did not displace its requirements that the benefit received by the plaintiff be held in common with the beneficiaries, and that the benefit

derived by the beneficiaries be commensurate to the benefit conferred upon the plaintiff. Cases that apply *Hall* without further inquiry put the cart before the horse—by presuming benefits, due to the mere fact of bringing suit, and are in danger of stretching the doctrine near the forbidden line drawn in *Alyeska*. The common benefit doctrine, as is the case with other exceptions to the American Rule, is to be construed narrowly. Thus, plaintiff Diduck is not entitled to attorneys' fees due to the inapplicability of the common benefit doctrine in a case in which purely monetary damages are awarded or received through settlement.

### C. Application for Preliminary Injunctive Relief

Plaintiffs claim that their June 1983 application for preliminary injunctive relief conferred a benefit upon the union membership by (1) resulting in the conduct of the union election by the New York State Mediation Board, an independent outside agency, and (2) prompting a LIUNA order directing Local 95 to find Chotowicky and Diduck eligible for office. Plaintiffs in effect argue that their motion served as a "catalyst"[14] to the defendant's actions.

The events that precipitated the June 1983 motion for a preliminary injunction are outlined below. On April 29, 1983, during a nominations meeting, plaintiffs Rodonich, Chotowicky, and Diduck were nominated for the offices of Secretary–Treasurer, Vice–President, and President, respectively.[15] The following day, plaintiffs appeared before Local 95's Judges of Election. Then, on May 11th, during the membership meeting at which the Judges were to render their decision regarding the plaintiffs' eligibility for

---

**12.** The plaintiff's $40,000 damages award against the Local Union was affirmed on appeal, however, his $25,000 damages award against the Joint Council, an intermediate governing body of the Teamsters Union, was reversed. *See Ryder*, 970 F.2d at 1471.

**13.** Fees are also properly awarded where the plaintiff receives the functional equivalent of equitable relief, whether by settlement or under a catalyst theory. *See supra* n. 5.

**14.** In the Second Circuit, the catalyst test has been held applicable to a variety of actions. *See,*

*e.g., Rose v. Heintz*, 806 F.2d 389, 391 (2d Cir. 1986) (42 U.S.C. § 1988); *Gerena–Valentin v. Koch*, 739 F.2d 755, 758 (2d Cir.1984) (Voting Rights Act); *Garcia v. Sullivan*, 781 F.Supp. 969, 972 (S.D.N.Y.1991) (Equal Access to Justice Act (EAJA)); *Goldberg v. Hall*, 1988 WL 215393, at *4 (S.D.N.Y. July 28, 1988), *aff'd*, 873 F.2d 1435 (common benefit); *Pickman v. Dole*, 671 F.Supp. 982, 987 (S.D.N.Y.1987) (Rehabilitation Act).

**15.** Plaintiff Lawro was not nominated for office.

office, the Judges instead resigned without ruling on the eligibility of the candidates. On May 12th, plaintiff Rodonich appealed to LIUNA from the Local's failure to qualify the plaintiffs for office and to submit the report of the Judges to the membership. By postcards dated May 16th, Local 95 sent notice of a second nominations meeting to be held on May 19, 1983. Plaintiff Chotowicky appealed to LIUNA on May 18th protesting the second nominations meeting. LIUNA declined to hear both Chotowicky's and Rodonich's appeals on the ground that they were premature, in that the Judges of Election had not yet rendered a decision on their eligibility. On May 19th, the plaintiffs were again duly nominated, and on the following day, May 20th, appeared before the newly-appointed Judges of Election to respond to challenges to their nominations. On May 26th, during a membership meeting, the Judges announced that the plaintiffs' nominations had been rejected.

On May 27th, the plaintiffs appealed the Local's denial of their nominations to LIUNA. By letter dated June 6, 1983, LIUNA acknowledged receipt of their appeals. The new election was scheduled for June 25, 1983. On June 9, 1983, plaintiffs moved by order to show cause for (1) entry of an injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the holding of the 1983 election, (2) entry of an order directing the defendants to place the names of the three plaintiffs and supplemental plaintiff Hardy on the ballot as candidates for the offices for which they had been nominated, and (3) leave to file a supplemental complaint pursuant to Fed.R.Civ.P. 15(d), setting forth facts upon which the motion was based and adding Hardy as a co-plaintiff. At the time of the June motion LIUNA had not yet rendered its decision on the plaintiffs' appeals.

At a conference on June 14, 1983, the Court held decision on the June motion in abeyance since LIUNA had stayed the elec-

tion until completion of an investigation of the plaintiffs' appeals. On July 28th, and August 11, 1983, LIUNA conducted hearings pertaining to the appeals. LIUNA then ordered Local 95 to hold a third nominations meeting under the supervision of the New York State Mediation Board.[16] On October 1, 1983, the plaintiffs' nominations were again rejected, and on October 13th plaintiffs appealed to LIUNA. On October 26, 1983, the General President of LIUNA sent a telegram to Local 95 directing them to place Chotowicky's and Diduck's names on the ballot. The General President ruled, however, that Rodonich was not eligible for candidacy in the union election since he had not been working at the "calling" within the meaning of Article V, section 4 of the Uniform Local Constitution. A new election was scheduled for November 19, 1983. The plaintiffs reiterated their application for a preliminary injunction by supplemental memorandum filed October 21, 1983, in which they sought (1) judicial supervision of the November election, (2) an order directing that the defendants place the plaintiffs' names on the ballot, and (3) an order declaring certain of the individual defendants ineligible for office. Defendant LIUNA opposed the motion on the grounds that (1) plaintiffs Chotowicky and Diduck had already been placed on the ballot pursuant to the LIUNA order, (2) Rodonich was not properly qualified for office, and (3) supervision of the election was within the exclusive jurisdiction of the Secretary of Labor.

The Court assigned the matter to Magistrate Howard J. Raby for a report and recommendation. The Magistrate issued a report and recommendation dated November 14, 1983, in which he recommended the denial of the plaintiffs' motion for a preliminary injunction. The Magistrate concluded that the issue of judicial supervision had been rendered moot, since "in the face of the plaintiffs' charges, the defendants have made arrangements for the supervision of the proposed election by the New York State Board

---

16. LIUNA contends that Local 95, and not itself, arranged for supervision of the election by the New York State Mediation Board. *See* Defendant Laborers' International Union's Memorandum of Law in Opposition to Plaintiffs' Application for Attorneys' Fees, 82 Civ. 5583 (JMC), at

31. The Court, however, need not determine from where the directive emanated, in light of its holding that attorneys' fees are not available due to the Court's lack of subject matter jurisdiction over the underlying Title IV claim. *See infra.*

of Mediation [17] (*See* letter to me from counsel for the defendant Local, dated November 2, 1983, filed herewith.)." Report and Recommendation of Harold J. Raby, United States Magistrate Judge, 82 Civ. 5583 (JMC), at 3 (S.D.N.Y. Nov. 14, 1983) [hereinafter *Report and Recommendation*]. Thus, the Magistrate recommended summary denial of the plaintiffs' request for an Order directing judicial supervision. The Magistrate also concluded that the issue of improper disqualification had been mooted as to all the candidates except Rodonich, in that Chotowicky and Diduck had been declared qualified for election. As to the issues of Rodonich's disqualification and the alleged improper qualification of opposition candidates, the Magistrate noted that the plaintiffs could challenge these matters in a proceeding before the Secretary of Labor. *See id.* at 4. The final issue addressed by the Magistrate's Report and Recommendation was whether the Court was empowered to enjoin or stay the November election. The Magistrate concluded that in an action, the purpose of which was to challenge the qualifications of opposition candidates and the disqualification of their own candidates, the plaintiffs' exclusive remedy was to file a post-election complaint with the Secretary of Labor under 29 U.S.C. § 482. *See id.* at 5.

Magistrate Raby's Report and Recommendation recommending the denial of the plaintiffs' application for a preliminary injunction was affirmed by the Court on November 18, 1983. The Court stated that it did "not have jurisdiction pursuant to Title I—plaintiffs' exclusive remedy is with the Secretary pursuant to Title IV." Memorandum and Order, 82 Civ. 5583 (JMC), at 6 (S.D.N.Y. Nov. 18, 1983). Defendants' motion to dismiss the supplemental complaint was thereafter granted on February 28, 1984, since the Court had held that the plaintiffs' exclusive remedy was with the Secretary of Labor pursuant to Title IV of the LMRDA. *See* Memorandum and Order, 82 Civ. 5583 (JMC), at 5 (S.D.N.Y. Feb. 28, 1984).

The Court denied the plaintiffs' motion for a preliminary injunction and dismissed the plaintiffs' supplemental complaint because it

**17.** *See supra* n. 16.

lacked subject matter jurisdiction over the plaintiffs' Title IV claims. Thus, an award of attorneys' fees that is predicated on the Title IV claims—whether mooted or otherwise—is not proper, as the Court likewise lacks the requisite subject matter jurisdiction to award attorneys' fees and costs.

### 1. *Catalyst Theory*

Even in the absence of a ruling on the merits, a party may be deemed prevailing where the defendant's voluntary compliance moots the relief sought by the plaintiffs. *See Hennigan v. Ouachita Parish School Bd.*, 749 F.2d 1148, 1151 (5th Cir. 1985). The plaintiff must establish that his lawsuit was a "catalytic, necessary, or substantial factor in attaining the relief." *Gerena–Valentin v. Koch*, 739 F.2d 755, 758–59 (2d Cir.1984) (quoting *Commissioners Ct. of Medina County, Tex. v. United States*, 683 F.2d 435, 440 (D.C.Cir.1982)); *see Rock Creek Ltd. Partnership v. State Water Resources Control Bd.*, 972 F.2d 274, 277 (9th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993). This causal inquiry is largely factual. *See Pearson v. Fair*, 980 F.2d 37, 44 (1st Cir.1992). The plaintiff need not show that it was the exclusive cause of the defendant's remedial action, only that "it [was] a material factor in prompting the defendant to afford relief." *Disabled in Action of Pa. v. Pierce*, 789 F.2d 1016, 1019 (3rd Cir.1986). In determining whether the plaintiff's lawsuit acted as a catalyst to the defendant's subsequent measures, the chronology of events is an important, though not a dispositive factor. *See Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978).

In the ordinary fee application case, the fee proponent has the burden of establishing entitlement to the fee. However, in a case such as this, in which the relief sought by the plaintiff has been mooted by the defendant's arrangement for supervision of the November election, and its qualification of Diduck and Chotowicky as candidates, the facts necessary to prove catalytic effect are usually "in the sole possession of the fee opponent." Mary F. Derfner & Arthur D.

562

Wolf, Court Awarded Attorney Fees, ¶ 9.02, at 9–24.6 (Bender Rel. 17, 1993). Thus, "the burden properly shifts to defendants to establish the absence of a causal connection in order to defeat a claim for legal fees." *Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir.1984).

### 2. *Subject Matter Jurisdiction*

■ Whether or not the plaintiffs' motion served as a "catalyst" in the factual sense, it cannot be deemed to have "caused" the defendant's compliance in the legal sense, in the absence of the Court's subject matter jurisdiction over the Title IV claim and the application for attorneys' fees and costs related thereto. In order to award attorneys' fees a court must have subject matter jurisdiction over the underlying suit.[18] In *United States v. 27.09 Acres of Land*, 1 F.3d 107 (2d Cir.1993), the Second Circuit held that where the district court's subject matter jurisdiction was predicated upon the entry of final judgment it was without jurisdiction to hear a premature fee application under the Equal Access to Justice Act, and therefore, vacatur of the fee award was required. *See id.*, at 111; *Toth v. United Auto., Aerospace and Agr. Implement Workers of Am., UAW*, 743 F.2d 398, 405 (6th Cir.1984) ("any judgment of recovery (including an attorneys' fees award) [must] be grounded in *subject-matter* jurisdiction"). In *Keene Corp. v. Cass*, 908 F.2d 293 (8th Cir.1990), the Eighth Circuit held that the dismissal of plaintiff's suit under 42 U.S.C. § 1983 for lack of subject matter jurisdiction precluded an award of attorneys' fees pursuant to 42 U.S.C. § 1988. *See id.*, at 298; *see also Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 567 (5th Cir.1991) (court ordered return of attorneys' fee award where ERISA was held not applicable and therefore court had no jurisdiction to order arbitration); *Borden v. Katzman*, 881 F.2d 1035, 1039 (11th Cir.1989) (court reversed award of attorneys' fees under the Copyright Act of 1976 since district court did not have subject matter jurisdiction over state law

claim); *Latch v. United States*, 842 F.2d 1031, 1033 (9th Cir.1988) (district court not empowered to award attorneys' fees where it lacked subject matter jurisdiction over underlying tax claim). Similarly, here, the Court's lack of subject matter jurisdiction over plaintiffs' Title IV claims bars an award of attorneys' fees under the common benefit doctrine.

In his Report and Recommendation, the Magistrate explicitly discussed subject matter jurisdiction with reference to the non-mooted claims—plaintiffs' claim that Rodonich be placed on the ballot, the claim that certain opposition candidates be disqualified for election, and the plaintiffs' prayer for judicial supervision of the election. Plaintiffs' election claims were dismissed by the Court in their entirety in the February 28, 1984 Memorandum and Order. Even with regard to the mooted claims whose merits were not reached, namely that Diduck and Chotowicky be qualified for election, and that the New York State Mediation Board supervise the election, subject matter jurisdiction was similarly lacking since the mooted claims were also jurisdictionally defective Title IV claims.

■ In *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Supreme Court held that a district court did not have jurisdiction under section 102 over a suit "which in substance charge[d] a breach of Title IV rights." *Id.*, at 138, 85 S.Ct. at 295. The Supreme Court viewed the equal rights language of section 101(a)(1) as "no more than a command that members ... shall not be discriminated against in their right to nominate and vote." *Id.*, at 139, 85 S.Ct. at 296. The Court noted that Title IV, in contrast, governs the eligibility and qualifications standards for candidates for union office, and has its own prescribed administrative and judicial procedure. *See id.*, at 138, 85 S.Ct. at 295. The union members in *Calhoon* were not discriminated against within the meaning of section 102 since they were

---

18. The only exception to this rule that the Court is aware of is that a court is empowered to award fees as a Rule 11 sanction for commencing suit in a court that lacks subject matter jurisdiction. *See Willy v. Coastal Corp.*, —— U.S. ——, 112 S.Ct. 1076, 1081, 117 L.Ed.2d 280 (1992). This exception is justified since the imposition of sanctions requires only the determination that an attorney has abused the judicial process, and thus does not touch upon the merits of the case. *See id.* at ——, 112 S.Ct. at 1080.

"denied no privilege or right to vote or nominate which the union has granted to others." *Id.*, at 139, 85 S.Ct. at 296. Their challenge was instead directed to the reasonableness of the eligibility requirements, which being governed by Title IV, was within the exclusive jurisdiction of the Secretary of Labor under section 402. In holding a suit under section 402 to be the plaintiff's exclusive remedy, the Court noted that "[r]eliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts." *Id.* at 140, 85 S.Ct. at 296.

A number of federal district courts have applied *Calhoon* to find jurisdiction absent in cases brought under Title IV of the LMRDA. In *McArthy v. District Lodge No. 9, I.A.M.A.W.*, 252 F.Supp. 350 (E.D.Mo.1966), the plaintiff sought a pre-election injunction enjoining the defendants from acting on an order of disqualification, and ordering his reinstatement as a candidate. *See id.*, at 351–52. The court noted that *Calhoon* precluded the plaintiff from recasting his suit as one arising under Title I. *See id.*, at 352. The district court further cited the Act's legislative history as conclusive that the section 483 exclusivity provision foreclosed a pre-election suit by a union member to vindicate rights under section 481, and that the language in section 483,[19] which preserves existing rights and remedies prior to election, was inserted by Congress to ensure that section 483 did not displace pre-existing rights and remedies under state law. *See id.* at 353. The *McArthy* court concluded that "[t]he comprehensive and careful detailing of remedies under the L.M.R.D.A. rules against any contention that a federal district court might have primary pre-election jurisdiction of § 481 issues under the general jurisdiction statutes, 28 U.S.C. §§ 1331 and 1337." *Id.*

The district court reached a similar result in *Jackson v. National Marine Engineers Beneficial Association of U.S.A.*, 221 F.Supp. 347 (S.D.N.Y.1963). In *Jackson*, the plaintiff moved for a preliminary injunction enjoining the union from enforcing its eligibility requirements, and from holding the election unless plaintiff's name was placed on the ballot, and the defendant cross-moved to dismiss for lack of jurisdiction. *See id.*, at 347–48. The court noted that the equal rights guarantee of section 101(a)(1) applies only to the right to nominate candidates and the right to vote in an election, while eligibility requirements are within the exclusive ambit of section 401(e). *See id.* at 348. Quoting from *Johnson v. San Diego Waiters and Bartenders Union, Local 500*, 190 F.Supp. 444 (S.D.Cal.1961), the court explained that Title I protects the rights of the nominator, while Title IV "protects the right of an individual to be a candidate for election." *Jackson*, 221 F.Supp. at 348 (quoting *Johnson*, 190 F.Supp. at 447–48). The court, holding that the plaintiff's exclusive remedy was to file a complaint with the Secretary of Labor, dismissed the complaint for lack of jurisdiction.

In the instant case, plaintiffs' claims, mooted or otherwise, focused upon eligibility requirements, prayed for their reinstatement as candidates and for an order prohibiting the defendants from acting upon their orders of disqualification, and requested judicial supervision of the upcoming election, and thus were exclusively within the Secretary's jurisdiction under Title IV. *See also McDonough v. Local No. 32–E of Service Employees Int'l Union AFL–CIO*, 586 F.Supp. 463, 466 (S.D.N.Y.1984) (pre-election motion for injunctive relief premised upon irregularities in the conduct of a meeting held to nominate candidates, and praying that the defendants be enjoined from proceeding with the election, dismissed upon the authority of *Calhoon*); *Laski v. Int'l Org. of Masters, Mates and Pilots*, 502 F.Supp. 134, 135 (S.D.N.Y.1980) (plaintiffs' suit to perma-

---

**19.** Section 483 provides:

Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.

29 U.S.C. § 483 (1985).

nently enjoin union from disqualifying certain union members as candidates in upcoming election dismissed for lack of subject matter jurisdiction). The June 1983 motion for a preliminary injunction, based as it was upon relief in aid of the plaintiffs' rights of candidacy, is indistinguishable from the above cited cases, and therefore barred by *Calhoon.*

There are only limited exceptions to the Secretary's jurisdiction. Title I suits premised upon a scheme to suppress dissent within the union are also outside the scope of section 402. In *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir.1973), the Second Circuit held that federal court intervention was proper "where union action abridging both Title I and Title IV can be fairly said, as a result of established union history or articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union." *Id.* at 904. The court viewed the restrictions on the eligibility of the plaintiff in *Schonfeld* as "a form of intimidation of the membership" which "amount[ed] to reprisal of efforts by Schonfeld and others to advocate and implement changes in union structure and procedures." *Id.* at 903.

In *Rodonich,* the Second Circuit held that the proper standard for assessing the liability of a parent international was ratification with full knowledge of the local union's activities. *See Rodonich,* 817 F.2d at 973. During the 1986 trial, LIUNA was found not liable on the scheme to suppress claim as against plaintiffs Rodonich, Chotowicky, and Lawro. *See id.* at 969. The Second Circuit affirmed on the scheme to suppress claim, concluding that the plaintiffs' mere allegations of improper discipline were insufficient to impugn LIUNA under the ratification standard, as the "discipline was based on concrete violations of official duties" and "[n]othing on the face of these charges suggested a scheme to suppress dissent within Local 95." *Rodonich,* 817 F.2d at 973; *see also Phelan v. Local 305,* 973 F.2d 1050, 1062 (2d Cir.1992) (receipt of written complaints, attendance at meeting where complaints voiced, and offer or limited provision of legal services not enough to establish ratification, therefore

summary judgment was proper); *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1289–91 (3rd Cir.1991) (notice of complaints relating to discriminatory job referrals, and decision to withhold action following investigation into complaints, and failure to intervene after witnessing verbal and physical attack upon union member not enough to show ratification); *Bollitier v. Int'l Bhd. of Teamsters,* 735 F.Supp. 612, 620 (D.N.J.1989) (awareness of familial relationship of charging parties to president with whom the plaintiff was feuding, and their presence on board responsible for plaintiff's expulsion, insufficient to demonstrate ratification where International relied on de novo hearing conducted by Joint Council). Similarly, there is no evidence of a scheme to suppress dissent on the part of LIUNA during the 1983 election. Plaintiff Rodonich's disqualification was sustained on what was deemed "a factually incontestable ground." *See* Report and Recommendation, *supra,* at 4. Nothing on the face of Chotowicky's and Lawro's disqualifications alerted LIUNA of a scheme to suppress dissent within Local 95, assuming that the election was even part of such a scheme, which has not been established.

Even if such a scheme were proven, the Court's authority to grant relief in a Title I action would be "circumscribed by the policy considerations underlying Title IV of the LMRDA." *Mayes v. Int'l Union of Operating Engs., Local 106,* 642 F.Supp. 968, 971 (N.D.N.Y.1986). In *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), the Supreme Court held that the propriety of maintaining a Title I suit during the course of a union election was dependent upon "the appropriateness of the remedy required to eliminate the claimed statutory violation." *Id.,* at 550, 104 S.Ct. at 2571. For intrusive remedies such as the nullification of an ongoing election and the ordering of a new election under court supervision, the union member is restricted to proceeding under Title IV. *See id.* However, the district court retains jurisdiction to grant relief where union members "allege violations of Title I that are easily remediable under that Title without substantially

delaying or invalidating an ongoing election." *Id.* at 546, 104 S.Ct. at 2569. In *Mayes,* the court held that the relief requested by the plaintiff, requiring the union to list the plaintiff on the ballot as the only candidate for President, and prohibiting five candidates from appearing on the ballot due to non-compliance with attendance requirements outlined in the union's constitution, would necessitate invalidation of the upcoming election and supervision of a new election, in contravention of *Crowley. See Mayes,* 642 F.Supp. at 971; *see also Bishop v. Duval,* 592 F.Supp. 16, 18 (S.D.N.Y.1984) (*Crowley* foreclosed plaintiff's request to enjoin defendants from holding convention until alleged errors in delegate representation and voting rectified). Thus, even if plaintiffs' motion for a preliminary injunction could have been said to implicate Title I, the remedy sought would have been improper under *Crowley.*

Since all the claims contained in the motion for a preliminary injunction and the supplemental complaint related to eligibility requirements and thus constituted a Title IV action under *Calhoon* and its progeny, and since there was no evidence of a scheme to suppress under *Schonfeld,* and in any event, since the remedy prayed for was foreclosed by *Crowley,* the Court lacked subject matter jurisdiction[20] over the mooted as well as the non-mooted claims. Consequently, fees cannot be awarded for pursuing a motion in the District Court which the Court could not have heard due to its lack of subject matter jurisdiction. The fortuity that defendant mooted, at least partially, the relief sought by plaintiffs, cannot confer jurisdiction on the Court to award relief which it is not empowered to grant. Moreover, awarding attorneys' fees would encourage obviation of the Title IV remedy prescribed by Congress. Thus, the plaintiffs' application for attorneys'

fees and costs relating to the June 1983 motion for preliminary injunctive relief must be denied as the Court lacked subject matter jurisdiction over plaintiffs' underlying Title IV claims.

### CONCLUSION

Plaintiffs' motion for substitution of Edward T. Markunas, executor of the Estate of Harry Diduck, as party plaintiff in place of the deceased Harry Diduck is granted. Fed. R.Civ.P. 25(a). Plaintiffs' motion for attorneys' fees and costs is denied.

SO ORDERED.

---

**20.** Nor can a fee award be justified under principles of ancillary jurisdiction. The plaintiffs did not seek to assert a claim that would be cognizable in another court; they sought to assert a claim which only the Secretary of Labor had standing to bring under Title IV. Thus, both the underlying Title IV claim and any motion for attorneys' fees attributable thereto must fail for want of subject matter jurisdiction. *See, e.g., National Union of Hosp. and Health Care Employees v. Retail, Wholesale, Dep't Store Union,*

1984 WL 637, at *6 (S.D.N.Y.1984) (court without jurisdiction to order specific performance of settlement agreement since it entailed inquiry into the validity of the ballot count, and since court not empowered to order new election); *Sipe v. Local Union No. 191 United Bros. of Carpenters and Joiners of Am.,* 393 F.Supp. 865, 871 (M.D.Pa.1975) (granting defendant's motion to dismiss plaintiff's claims relating to his removal from union office).