52 F.3d 28
 149 L.R.R.M. (BNA) 2033, 63 USLW 2649,
130 Lab.Cas. P 11,307
 Joseph RODONICH, Alex Chotowicky, Wasyl Lawro, Harry Diduck,
Edward T. Markunas, Executor of the Estate of
Harry Diduck, Plaintiffs-Appellants,
v.
John SENYSHYN, individually, and as president, John
Roshetski, individually, and as treasurer, Stephen McNair,
Joseph Sherman, Andrew Klebetz, Albert Bender, William
Nahay, Phil Chillak, Joseph Pastroski, Samuel Adams, Harold
Spellman, Peter Jones, John Slan, Earl Dupree, John Chillak,
Albert Nahay, Defendants,
Housewreckers Union Local 95 and Laborer's International
Union of North America, Defendants-Appellees.
 Nos. 54, 55, Dockets 92-7394, 93-9262.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 2, 1994.
Decided April 10, 1995.
 
 Wendy E. Sloan, New York City (Lewis M. Steel, Hall & Sloan, of counsel), for plaintiffs-appellants.
 Michael Barrett, Connerton, Ray & Simon, Washington, DC (Theodore T. Green, Laborers' Intern. Union of North America, of counsel), for defendant-appellee Laborers' Intern. Union of North America.[1]
 Before: MINER, JACOBS, and PARKER, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 The question presented is whether a union member who sues his union under Sec. 102 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. Sec. 412, is precluded from recovering attorney's fees from the union where the sole relief achieved is money damages. The United States District Court for the Southern District of New York (Cannella, J.) answered that question in the affirmative and therefore denied plaintiff Harry Diduck's request for attorney's fees after entry of judgment in his favor on remand from this Court. We conclude that the answer to the question depends upon the surrounding circumstances, including consideration of whether the monetary award had a salutary effect on union governance and the rights of members, and we therefore reverse and remand for a determination of whether, under the circumstances of this case, an award of attorney's fees is appropriate.
 
 BACKGROUND
 
 2
 The long history of this case is chronicled in a previous decision of this court. See Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union, 817 F.2d 967 (2d Cir.1987) ("Rodonich II "). We presume familiarity with that opinion and recount only those facts that bear upon and illuminate our resolution of the question presented.
 
 
 3
 In 1981, the governance of Local 95 of the House Wreckers Union (the "Local") was split between two competing factions. One faction was loyal to the Local's president, defendant John Senyshyn, and held three seats on the Executive Board. A faction loyal to plaintiff Joseph Rodonich also held three seats on the Board. The remaining, tie-breaking seat had recently been vacated. Plaintiff Harry Diduck, whose attorney's fees are the subject of this appeal, supported the Rodonich faction.
 
 
 4
 Notwithstanding the stalemate in the Executive Board, the Senyshyn faction was dominant. It held the senior positions within the Local and allegedly engaged in a pattern of conduct, including acts of physical violence, intended to suppress the Rodonich faction.
 
 
 5
 Diduck sent a letter dated May 25, 1981 to Senyshyn accusing him of various acts of misconduct and mismanagement in the Local's affairs, and alleging that Samuel Adams, a union member and Senyshyn adherent, had threatened Diduck with physical harm. Diduck sent copies to officials of the Laborers' International Union of North America ("LIUNA"). Shortly after this letter was mailed, Adams filed union disciplinary charges against Diduck, complaining that Diduck's letter "slandered" him in violation of a provision of the LIUNA constitution. These charges (along with other charges against plaintiffs Rodonich, Chotowicky, and Lawro), were taken up by the Local and assigned to a panel of union members selected by Senyshyn. After a hearing on August 21, 1981, the panel found Diduck guilty of having "slandered" Adams, fined Diduck $500 and warned him that any further offenses would lead to revocation of his union membership. Plaintiffs Rodonich, Chotowicky, and Lawro were also found guilty of various transgressions.
 
 
 6
 The union constitution afforded an avenue for plaintiffs to appeal to LIUNA. During the pendency of their appeal, Diduck and the others wrote numerous letters to LIUNA officials, "detailing the history of the factional dispute that led to their being disciplined and alleging that they had 'been disciplined for the exercise of [their] rights, as union members.' " Rodonich II, 817 F.2d at 971 (citation omitted). In their appeals before LIUNA's Eastern Hearings Panel, the four union members were represented by counsel, and were given the opportunity to argue their cases. Diduck's attorney alleged "that Diduck had been fined for statements he made in a letter to LIUNA and argued that such a fine violated the union constitution as well as Diduck's right of free speech." Id. The Hearings Panel rejected this claim, concluding that " 'the charges [against Diduck] are amply supported by the evidence.' " Id. That decision was approved and adopted by LIUNA's General Executive Board on February 23, 1982. The complaint in this litigation was filed on August 23, 1983.
 
 
 7
 The complaint alleged that the defendants had engaged in a scheme to suppress dissent within the Local, and had imposed unlawful discipline in violation of sections 101(a)(1), (2), (5), 609, and 610 of the LMRDA, 29 U.S.C. Secs. 411(a)(1), (2), (5), 529, 530 (1982). The complaint also alleged a variety of other statutory and common law claims. Before trial, the district court dismissed plaintiffs' state law contract claim, and granted LIUNA summary judgment on plaintiffs' claim based on a violation of LIUNA's constitution. See Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union of N. Am., 624 F.Supp. 678 (S.D.N.Y.1985) ("Rodonich I "). The remaining claims were tried to a jury, which returned a verdict in favor of Rodonich, Chotowicky and Lawro, and against Local 95. The district court entered final judgment consistent with this verdict, dismissing all remaining claims against LIUNA, and dismissing all claims interposed by Diduck.
 
 
 8
 On appeal, another panel of this Court affirmed the dismissal of claims against LIUNA, except that it reversed the dismissal of Diduck's claims both against LIUNA and against Local 95, and remanded with instructions that the district court enter judgment in favor of Diduck and conduct further proceedings on the issue of damages. See Rodonich II, 817 F.2d at 978. Diduck's damages claim was scheduled for hearing on July 5, 1989. The parties settled on the courthouse steps, and the district court entered the appropriate order. Diduck reserved the right to move for equitable relief and an award of attorney's fees and costs, which he did shortly after the settlement. On July 8, 1991, the district court denied Diduck's motion for injunctive relief and ordered Diduck's counsel to submit a motion for attorney's fees within 30 days. On March 3, 1992, the district court denied plaintiffs' application to reargue their motion for injunctive relief, and the plaintiffs filed a timely notice of appeal; that appeal, however, was stayed pending final resolution of the attorney's fee issue. On November 1, 1993, the district court denied the fee application in its entirety. See Rodonich v. House Wreckers Union, Local 95 of Laborers' Int'l Union of N. Am., 837 F.Supp. 550 (S.D.N.Y.1993) ("Rodonich III "). This appeal followed, but Diduck himself had by then succumbed. Diduck's executor, who has been substituted as a party, has concluded that the estate has no right to pursue injunctive relief.
 
 DISCUSSION
 
 9
 In Rodonich II, we held that "[t]here is no question that discipline of a union member for even libelous speech is a violation of the LMRDA." 817 F.2d at 975. We concluded that the sanctions imposed by the union--although unenforced--punished Diduck's exercise of his free speech rights under the LMRDA, and we therefore remanded to the district court for entry of a directed verdict in Diduck's favor. Id. at 976.
 
 
 10
 In due course, judgment in the amount of $20,000 each was entered against LIUNA and the Local. The district court, however, refused to award any attorney's fees to Diduck. Relying on cases from the Fifth and Sixth Circuits, the court concluded that, because only money damages were awarded, there was no "common benefit" bestowed upon the union membership. See Rodonich III, 837 F.Supp. at 556-59 (citing Guidry v. International Union of Operating Eng., Local 406, 882 F.2d 929, 944 (5th Cir.1989), vacated on other grounds, 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603 (1990); Shimman v. International Union of Operating Eng., Local 18, 744 F.2d 1226 (6th Cir.1984), cert. denied, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985)). The failure to obtain equitable relief, according to the district court, precludes an award of attorney's fees. We disagree.
 
 
 11
 Section 102 of the LMRDA (under which this action was brought) recites that a court may award "such relief (including injunctions) as may be appropriate," but does not mention attorney's fees. 29 U.S.C. Sec. 412. The Supreme Court, however, has held that an award of attorney's fees to a successful plaintiff who sues under section 102 (to vindicate his rights under section 101, 29 U.S.C. Sec. 411) "is consistent with both the Act and the historic equitable power of federal courts to grant such relief in the interests of justice." Hall v. Cole, 412 U.S. 1, 14, 93 S.Ct. 1943, 1950, 36 L.Ed.2d 702 (1973). According to the Court, this rule represents a logical extension of the "common benefit" doctrine of Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), which permits an award of attorney's fees where "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' " Hall, 412 U.S. at 5, 93 S.Ct. at 1946 (quoting Mills, 396 U.S. at 393-94, 90 S.Ct. at 626-27).[2]
 
 
 12
 Although this common benefit doctrine is in derogation of the general "American Rule" barring awards of attorney's fees in the absence of statutory authority, lawsuits brought under section 102 of the LMRDA present a special case. Title I of the Act, of which sections 101 and 102 are part, constitutes the " 'Bill of Rights of Members of Labor Organizations'--[and] was specifically designed to promote the 'full and active participation by the rank and file in the affairs of the union'...." Hall, 412 U.S. at 7-8, 93 S.Ct. at 1947 (quoting American Fed. of Musicians v. Wittstein, 379 U.S. 171, 182-83, 85 S.Ct. 300, 306-07, 13 L.Ed.2d 214 (1964)). This charter of rights effectively superimposes the core values of democratic governance, such as the First Amendment right of free speech, onto union operations. See G.P. Reed v. United Transp. Union, 488 U.S. 319, 325, 109 S.Ct. 621, 626, 102 L.Ed.2d 665 (1989). Therefore, the Hall Court held, a union member who "vindicat[es] his own right of free speech" in a lawsuit has "contribute[d] to the preservation of union democracy," and has thereby bestowed a common benefit upon the rank and file membership of the union. Hall, 412 U.S. at 8, 93 S.Ct. at 1947-48. "Thus, as in Mills, reimbursement of [the member's] attorneys' fees out of the union treasury simply shifts the costs of litigation to 'the class that has benefited from them and that would have had to pay them had it brought the suit.' " Id. at 8-9, 93 S.Ct. at 1948 (quoting Mills, 396 U.S. at 397, 90 S.Ct. at 628).
 
 
 13
 The district court surveyed cases in this Circuit that have resulted in an award of attorney's fees under the LMRDA, observed that in each case equitable relief formed at least one component of the remedy granted, and concluded that equitable relief is a necessary predicate for the award of attorney's fees, relying on cases from other circuits to define and limit that doctrine. See Rodonich III, 837 F.Supp. at 558-59. In Shimman, a union member sued under section 102 of the LMRDA, alleging that the union and its officials violated his rights under section 101 of the Act. He prevailed at trial and was ultimately awarded over $250,000 in actual and punitive damages. The Sixth Circuit first noted that the tangible and intangible benefits received by the plaintiff were disproportionate to the purely intangible benefits accruing to the rest of the membership:
 
 
 14
 This is clearly not a case where the plaintiff 'benefits a group of others in the same manner as himself.' Shimman obtained redress for personal injuries not shared by other union members. The purpose of the common benefit exception is to shift the costs of litigation to 'the class that benefited from them and that would have had to pay them had it brought the suit.' Other union members could not have brought suit to redress Shimman's personal injuries.
 
 
 15
 Shimman, 744 F.2d at 1235 (citations omitted). For those reasons, and because the punitive damage award was "well in excess of the fees sought," the Sixth Circuit held that the common benefit doctrine did not warrant an attorney's fee award. Id. at 1235-36.
 
 
 16
 The Fifth Circuit adopted this analysis in Guidry. The plaintiff in that case alleged, inter alia, that certain union practices were designed to suppress dissent within the ranks, and to limit competition in union elections. The plaintiff prevailed, and--as in Shimman and in this case--won monetary damages, but obtained no equitable relief. The Fifth Circuit rejected the plaintiff's "common benefit" argument. As in Shimman, the court emphasized that
 
 
 17
 other members of the union could not have brought suit to redress the injuries of an individual union member. Further, an award of attorneys' fees here would not spread the costs of litigation proportionate to the common benefit. Guidry would have to pay no more for the cost of litigation than any fellow union member, but he would receive substantially greater benefits in the form of cash awards.
 
 
 18
 Guidry, 882 F.2d at 944.
 
 
 19
 To the extent that these two cases presuppose that a common benefit cannot be conferred where the right being vindicated is personal to the plaintiff--i.e., where "other members of the union could not have brought suit"--we disagree. Section 102, confers standing on a "person whose rights secured by the provisions of this subchapter have been infringed," 29 U.S.C. Sec. 412, and thus requires the plaintiff to plead a violation of his own rights. Therefore, to deny attorney's fees under the common benefit doctrine on this basis would be incorrect as a matter of law.
 
 
 20
 Although Shimman and Guidry can be read to say that a finding of common benefit turns on whether or not equitable relief has been granted, we have never drawn such a line. Nor do we read Hall to require it. We have recognized that an award of money damages to an aggrieved union member can serve as a check on the abuse of power and can promote the exercise of democratic rights by the rank and file. In Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U., 749 F.2d 1000 (2d Cir.1984), we upheld an award of attorney's fees to a plaintiff who had won both injunctive relief and money damages, but emphasized that an award of money damages in itself may promote union democracy:
 
 
 21
 Although the substantial verdict awarded by the jury ... was largely set aside because it included recovery for one claim that was held on appeal not to be actionable ... it had the potential effect of deterring the union from denying members their due process procedural rights guaranteed by Sec. 101 of LMRDA and of encouraging union members to enforce those rights through Sec. 102.
 
 
 22
 Id. at 1006. We hold therefore that the district court erred in concluding that failure to obtain equitable relief precludes an attorney's fee award.
 
 
 23
 This does not mean that an award of attorney's fees is necessarily justified in this case. Whether or not an LMRDA plaintiff deserves an attorney's fee award is a factual determination that "rests squarely within the district court's discretion." Id. at 1004. This determination is fact specific, and is inherently a balancing of interests. In making this determination, the trial court should "appraise the need for and potential benefits derived from the attorney's services, based on the judge's personal observation of counsel's performance and his intimate familiarity with the case." Id.
 
 
 24
 In this case, the award of money damages potentially confers two kinds of benefit on the union membership: it may deter the union from disciplining others for the exercise of their free speech rights, and it may "dispel the 'chill' cast upon the rights of others" by the discipline imposed on Diduck and the other plaintiffs. See Hall, 412 U.S. at 8, 93 S.Ct. at 1947-48; Rosario, 749 F.2d at 1006. While these potential benefits are intangible and indirect, even atmospheric, they may nevertheless be substantial. It is a settled matter that, where attorney's fees are permitted, and where a lawsuit provided the "catalyst" for the sought policy change, the plaintiff may be considered to have "prevailed" and attorney's fees may be justified. See, e.g., Hewitt v. Helms, 482 U.S. 755, 760-61, 107 S.Ct. 2672, 2675-76, 96 L.Ed.2d 654 (1987). One issue to be resolved on remand, therefore, is whether the union has changed its policy regarding the discipline of members for "slander," and--if so--whether that change was caused in whole or part by this lawsuit.
 
 
 25
 Incidental to the relief granted, and in addition to any policy change that might have been brought about as a result of Diduck's claims, this lawsuit produced several declarations of law that may be deemed beneficial to the union membership. For example, on appeal from the district court's dismissal of his claims, Diduck won a ruling by this Court that even an unenforced fine is equivalent to discipline and therefore violates a union member's LMRDA rights when the fine is imposed for an unlawful purpose. See Rodonich II, 817 F.2d at 976. More broadly, that same opinion rejects LIUNA's invitation that we "craft a broad protection for international unions engaged in reviewing local union disciplinary action," holding instead that an international labor organization may be held liable for the unlawful disciplinary acts of its affiliate if the international organization affirms the discipline with full knowledge of its wrongful nature. Id. at 973, n. 1 and text. Finally, Rodonich II held that New York's three-year statute of limitations for personal injury actions applied to LMRDA suits. See id. at 976-78. In so doing, we split from other circuits that had held that a shorter six-month period (applicable to NLRB actions) applied. See Clift v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., 818 F.2d 623 (7th Cir.1987), vacated and remanded, 488 U.S. 1025, 109 S.Ct. 830, 102 L.Ed.2d 963 (1989); Davis v. United Auto., Aerospace & Agric. Implement Workers of Am., 765 F.2d 1510 (11th Cir.1985), cert. denied, 475 U.S. 1057, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986); Local Union 1397, United Steelworkers of Am., AFL-CIO v. United Steelworkers of Am., AFL-CIO, 748 F.2d 180 (3d Cir.1984). Two years later, in G.P. Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), the Supreme Court implicitly affirmed our decision when it reversed the Fourth Circuit and held that courts should use state-law personal injury limitations periods in LMRDA suits.
 
 
 26
 In the related context of civil-rights litigation, we have recognized that substantive benefits may accrue to the public through court decisions:
 
 
 27
 The monetary settlement in this case does not fully reflect the benefit the public gleaned from the litigation leading up to the settlement: the precedent that this case helped to establish contributed to changes in the hiring practices of the building trades and opened the courts to other meritorious civil rights claims. In so doing, appellees vindicated a policy that Congress considered of the highest importance,--a public benefit for which appellees and their counsel may be compensated.
 
 
 28
 Grant v. Martinez, 973 F.2d 96, 102 (2d Cir.1992) (citation omitted) (awarding attorney's fees in Title VII case), cert. denied, --- U.S. ----, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); see also Cowan v. Prudential Ins. Co. of Am., 935 F.2d 522 (2d Cir.1991). As in Grant, Diduck's efforts led to certain legal precedents that may be of some benefit to his fellow union members. While we do not hold that these benefits are, as a matter of law, substantial enough to mandate an attorney's fee award, they certainly bear examination by the district court on remand.
 
 
 29
 In rejecting the bright-line rule adopted by the district court, we are cognizant of its concern that "fee-shifting based on a general deterrence rationale is a back-door endorsement of the private attorney general approach." Rodonich III, 837 F.Supp. at 559. This statement alludes to Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), in which the Supreme Court rejected the argument by an environmental advocacy group that its litigation initiative barred construction of a portion of the Alaska pipeline and thereby conferred a public benefit justifying an award of attorney's fees against the pipeline company. The Court refused to extend the "private attorney general" theory of fee recovery beyond those situations expressly adopted by Congress: "[C]ongressional utilization of the private-attorney-general concept can in no sense be construed as a grant of authority to the Judiciary to jettison the traditional rule against nonstatutory allowances to the prevailing party and to award attorneys' fees whenever the courts deem the public policy furthered....". Id. at 263, 95 S.Ct. at 1624-25. In so doing, however, the Court expressly noted the continued vitality of the "common benefit" and "common fund" doctrines. See id. at 257-58, 95 S.Ct. at 1621-22 (citing, inter alia, Mills, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593; Hall, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702).
 
 
 30
 Alyeska is distinguishable on this fundamental point: the environmentalists in that case were litigating by self-appointment on behalf of the general public, and seeking fees from the pipeline company. Therefore, the case lacked the two hallmarks of a common benefit case: (1) there was no clearly ascertainable group of beneficiaries, and (2) the fees were not sought as an equitable contribution from the benefited class. See Mills, 396 U.S. at 393-94, 90 S.Ct. at 626-27 (attorney's fee award permissible where plaintiff's success confers benefit "on the members of an ascertainable class" and where the fee award "will operate to spread the costs proportionately among" the members of that class). These two distinctions separate common benefit cases from private-attorney-general cases. This case clearly falls into the former category: (1) there is an ascertainable class of beneficiaries (the union membership), and (2) the fees are sought from that class (via the union treasury). This is not a private-attorney-general case.
 
 
 31
 For these reasons, we disagree with the district court's assessment of Hall as being restricted to "the concrete benefits that flow from an award of equitable relief alone or in combination with damages." Rodonich III, 837 F.Supp. at 559. We read Hall to require only that (1) there be benefits in common arising from the plaintiff's lawsuit, and (2) that those benefits be substantial enough to warrant a fee award. This does not mean that each member of the union must receive precisely the same benefits as the plaintiff. Substantiality, in our view, is a proxy for rough proportionality. In virtually any lawsuit under section 102 the plaintiff will receive a greater benefit than other members. An order reinstating the plaintiff to union membership or dissolving a fine payable by the plaintiff is no less personal a benefit than an award of compensatory damages--the plaintiff in each case enjoys a direct benefit not shared by the rest of the membership. We therefore decline to draw a bright line between equitable and non-equitable relief. Of course, an award of money damages may so far exceed the benefits to the rest of the membership as to make the award of any attorney's fees unjust. Or, as in Shimman, the total damages awarded might be sufficient to compensate the plaintiff and pay the attorney's fees as well. This is not, however, one of those cases.
 
 
 32
 We have considered all other arguments and issues raised by the parties and find them to be without merit.
 
 CONCLUSION
 
 33
 We reverse the district court's denial of Diduck's motion for attorney's fees, and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Defendant-appellee House Wreckers Union, Local 95 did not appear in this appeal
 
 
 [2]
 This "common benefit" doctrine is itself an extension of the long-standing "common fund" doctrine which authorizes fee awards to a plaintiff whose "representative action creates or traces a 'common fund,' the economic benefit of which is shared by all members of the class." Hall, 412 U.S. at 5 n. 7, 93 S.Ct. at 1946 n. 7