Louis F. **ALLEN, et al., Plaintiffs,**

v.

**LLOYD'S OF LONDON, an unincorporated association; Corporation of Lloyd's, a/k/a Society and Council of Lloyd's; Council of Lloyd's, Defendants.**

**Civil Action No. 3:96CV522.**

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 12, 1997.

---

Henry H. McVey, III, Warren E. Zirkle, Charles M. Sims, McGuire, Woods, Battle & Boothe, Richmond, VA, Michael H. Rauch, Bonnie Steingart, Fried, Frank, Harris Shriver & Jacobsen, New York City, Cynthia T. Andreason, Leboeuf, Lamb, Greene & Macrae, Washington, DC, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

The plaintiffs, hereinafter referred to as "Names," have filed a Motion For Attorney's Fees seeking an award of the attorney's fees and litigation costs incurred prosecuting this action. The claim to attorney's fees is made pursuant to the "common benefit" doctrine, which permits a plaintiff to obtain reimbursement of attorney's fees and expenses under limited circumstances.

## PROCEDURAL HISTORY

The Names instituted this action under the Securities Exchange Act of 1934, 15 U.S.C. § 78j and 78n, against Lloyd's of London, an unincorporated association; the Corporation of Lloyd's, a/k/a the Society of Lloyd's; and the Council of Lloyd's (hereinafter referred to collectively as "Lloyd's"). The original Complaint designated other defendants: Equitas Holdings Limited; Equitas Reinsurance Limited; and Equitas Limited, a/k/a Equitas or Equitas Group (hereinafter referred to collectively as "Equitas"). The Names subsequently voluntarily dismissed Equitas without prejudice.[1]

Walter D. Kelley, Jr., Conrad M. Shumadine, Willcox & Savage, Norfolk, VA, A. Stephens Clay, Richard R. Cheatham, Stephen E. Hudson, Christopher B. Lyman, Kilpatrick & Cody, Atlanta, GA, for Plaintiffs.

The facts which precipitated this action are set forth in full in this Court's Memorandum Opinion dated August 23, 1996, which is reported at 1996 WL 490177 (E.D.Va.1996). The decision of the Fourth Circuit on appeal

---

1. Lloyd's asserts that, because the Fourth Circuit dismissed the action on the basis of a forum selection and choice of law clause, the Court lacks subject matter jurisdiction over the collateral issue presented by the motion for attorney's fees. In a related argument, Lloyd's asserts that the Fourth Circuit's mandate dismissing the action on its merits precludes consideration of the motion. Neither position is correct. The Fourth Circuit decided the appeal on the merits of the so-called "choice clauses" and on the merits of the Names' securities law claims—not on the basis that the district court lacked subject matter jurisdiction. That is because federal question jurisdiction lies even if the court finds no validly stated claim under the federal law which provides jurisdiction. Federal question jurisdiction includes the power to decide collateral issues such as motions for attorneys' fees. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395–96, 110 S.Ct. 2447, 2455–56, 110 L.Ed.2d 359 (1990). The Fourth Circuit's mandate does not alter that circumstance. *Sprague v. Ticonic National Bank,* 307 U.S. 161, 170, 59 S.Ct. 777, 781–82, 83 L.Ed. 1184 (1939).

did not disturb those factual findings. Hence, the facts as stated in the Memorandum Opinion will be the operative facts against which the motion for attorney's fees will be considered.

On July 19, 1996, the Names filed a motion for preliminary injunction to prevent Lloyd's from executing its Reconstruction and Renewal Plan ("R & R Plan"). The R & R Plan had two principal components: (1) a settlement offer which was intended to achieve a global settlement of all litigation between Lloyd's and the Names; and (2) the formation of Equitas, into which Lloyd's debt respecting those liabilities would be funneled. Under the R & R Plan, the Names were given the option of (A) capping their potential financial losses by partaking in the restructuring; or (B) risking continued unlimited liability by refusing participation in the restructuring. The Names were required to make that choice by August 28, 1996.

In their preliminary injunction motion, the Names complained that Lloyd's was wrongfully forcing them to decide whether to accept or to reject the R & R Plan without disclosing, as required by the United States securities laws, material facts which the Names needed to make the important decisions put to them under the R & R Plan. The Names also complained that the disclaimers set forth in the R & R Plan and in the individual settlement proposals appeared to foreclose any reliance on the truth of the representations made in the R & R Plan and its related documents. Lloyd's countered the Names' motion with its own motion to dismiss for improper venue, arguing that plaintiffs had signed General Undertakings containing choice of forum and choice of law clauses which obligated them to litigate their claims in England under English law. The parties presented evidence and argument on the motions for three days beginning August 19, 1996.

On August 23, 1996, this Court granted the plaintiff's preliminary injunction motion and denied Lloyd's motion to dismiss. As relevant to the preliminary injunction, the Court concluded that the Names had established a reasonable likelihood that they would succeed in proving (1) that the Names' original investments in Lloyd's were "investment contracts" covered by the Securities Act and the Exchange Act; (2) that the Names' investments in Lloyd's were "equity securities" subject to the registration requirements of § 12(g)(1) of the Exchange Act; and (3) that Lloyd's was soliciting a proxy or consent or authorization from the Names to accept its R & R Plan in violation of § 14(a) of the Exchange Act.[2] The Court entered a preliminary injunction the benefits of which enured to the plaintiff-Names and to all American Names who elected to be covered by the injunction.

On August 27, 1996, the Fourth Circuit granted Lloyd's emergency motion to stay the preliminary injunction, reversed the grant of preliminary injunctive relief and the denial of Lloyd's motion to dismiss, and remanded with instructions to dismiss the action. On September 3, 1996, the Fourth Circuit issued an opinion explaining the reasons for its August 27 Order. *See Allen v. Lloyd's of London,* 94 F.3d 923 (4th Cir. 1996).

The Court of Appeals based its decision principally on the choice of forum and choice of law clauses contained in the General Undertakings[3] allegedly signed by all Names. The Court held that enforcement of the choice of forum and choice of law clauses in the General Undertakings would not offend the anti-waiver provisions of the United States securities laws because the Names had adequate remedies in England. *Id.* at 928–30. The Court of Appeals also held, in the alternative, that the United States securi-

---

**2.** This Court also concluded that the plaintiffs had established a reasonable likelihood that they would succeed in proving that the interests in Equitas that Lloyd's was offering to the Names were "investment contracts," as was alleged in Count 2 of the First Amended Complaint. However, the Court did not grant preliminary injunctive relief on that basis.

**3.** Several plaintiffs and other American Names executed General Undertakings which did not contain choice of forum or choice of law clauses. For reasons neither explained nor readily apparent, the decision of the Fourth Circuit made no differentiation between Names who had executed "choice clauses" and Names who had not.

ties laws and their anti-waiver provisions did not apply to Lloyd's R & R Plan because the interests in Equitas that Lloyd's was offering were not investment contracts and because the R & R Plan did not involve the solicitation of a "proxy or consent or authorization" within the meaning of § 14(a) of the Exchange Act. *Id.* at 931–32.

The Court of Appeals did not explicitly address this Court's findings that (1) the Names' original investments in Lloyd's were "investment contracts" covered by the Securities Act and the Exchange Act and (2) that the Names' investments in Lloyd's were "equity securities" subject to the registration requirements of § 12(g)(1) of the Exchange Act. Nonetheless, the Court of Appeals directed this Court to dismiss the entire action. The Names attempted to obtain *en banc* review of the Fourth Circuit panel's opinion, to no avail. Ultimately, after a fair amount of litigation here and in the Court of Appeals over the precise import of the Court of Appeals' dismissal order, this Court, at the instruction of the Court of Appeals, dismissed this action on January 6, 1997.

Notwithstanding the Fourth Circuit's August 27 Order, which entitled Lloyd's to enforce the August 28, 1996 R & R deadline, Lloyd's voluntarily extended the deadline for Names to accept its settlement proposal. Lloyd's specifically cited the decision in this action as the basis for its decision to extend the deadline.[4] By the original August 28 deadline, only 53% of all American Names had accepted Lloyd's R & R Proposal. By mid-September, 77% of all American Names had accepted.

At the time the Names' Motion For Attorney's Fees was filed, the plaintiff's Petition for Writ of Mandamus was pending before the Supreme Court of the United States. That petition, however, was recently denied by the Supreme Court.

---

4. In a press release dated August 28, 1996, Lloyd's chairman, David Rowland, stated:

I acknowledge that many overseas members, particularly in the U.S., may have deferred acceptance of their offer in the light of the Virginia court judgment last Friday and the

## DISCUSSION

### I. THE COMMON BENEFIT DOCTRINE

Notwithstanding their ultimate lack of success on the merits, the Names now seek an award of attorney's fees and litigation costs against Lloyd's. The Names' motion invokes the "common benefit" doctrine.

Generally, under what is commonly referred to as the "American Rule" respecting attorney's fees, federal courts may not award attorney's fees and expenses absent statutory or contractual authority. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247–49, 95 S.Ct. 1612, 1616–18, 44 L.Ed.2d 141 (1975). Although the American Rule long has been that attorney's fees are not ordinarily recoverable from a defeated adversary, both the courts, through their traditional and inherent equity powers, and the Congress, through legislation, have developed exceptions to this rule in particular situations.

One such exception, fashioned judicially in a long line of decisions issued by the Supreme Court of the United States, is the "common benefit" rule. *See, e.g. Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The exception was confirmed and fortified in *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), wherein the Supreme Court rejected a private attorney-general theory of recovery of attorneys' fees but reaffirmed the common benefit theory based on "the historic power of equity to permit ... a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, in-

---

subsequent U.S. Appeals Court ruling in Baltimore last night. In the circumstances, I believe that the fair and proper course is to exercise flexibility in receiving acceptance forms beyond today's deadline.

cluding his attorneys' fees from the fund or property itself or directly from other parties enjoying the benefit." *Id.* at 257, 95 S.Ct. at 1621.

The Fourth Circuit also has applied the common benefit doctrine. In *Brewer v. School Board of City of Norfolk*, 456 F.2d 943 (4th Cir.1972), the leading common benefit case in this circuit, the Court of Appeals awarded attorney's fees to counsel for plaintiffs in a school desegregation case, who had secured a right to free bussing for all students assigned to schools beyond walking distance of their homes. The Court explained:

> The rationale ... is that it is only fair that he who creates or conserves a common fund or property should be reimbursed for his reasonable expenses, including attorneys' fees, for protecting the common fund for others having a similar interest with him in that fund.... The doctrine extends not only to cases in which a fund is either created or protected but also where the effect of the suit is the same as though a fund were created.
>
> The purpose of the award in such case, however, is not designed as an additional recovery against the wrongdoers, but as a means of ordering compensation to counsel from the class benefited.

*Id.* at 948–49.

■ In *Mills v. Electric Auto–Lite Co., supra,* the Supreme Court fashioned a three-part test for determining whether the common benefit exception should be applied. Under that test, reimbursement for attorney's fees is permitted where: (1) a substantial fund or benefit has been produced by the efforts of the plaintiffs; (2) the benefit has been conferred on an ascertainable class; and (3) the court's jurisdiction over the benefit allows the court to spread the costs of procuring the benefit among the entire class of beneficiaries. *See Mills,* 396 U.S. at 393–94, 90 S.Ct. at 626–27; *Virginia Hospital Association v. Kenley,* 74 F.R.D. 417, 419–20 (E.D.Va.1977).

The rationale which underpins the common benefit doctrine is the prevention of unjust enrichment: "To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Mills,* 396 U.S. at 392, 90 S.Ct. at 625. The typical common benefit case involves either actions by shareholders against their corporation, such as in *Mills,* or actions by union members against their union, such as in *Hall.* The ascertainable group is either the shareholders or union members; the court may spread the costs of the plaintiff's attorney's fees and expenses proportionally among the class by entering the award against the corporation or the union, to be paid out of the corporation's or union's treasury.

■ It is important to note that an award of attorney's fees and expenses under the common benefit doctrine does not depend on the specific nature of the relief granted the plaintiff. Indeed, a fee award may be predicated on the grant of either monetary or equitable relief. *See Mills,* 396 U.S. at 392, 90 S.Ct. at 625 ("The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on [the common benefit] rationale" because equitable relief was granted.); *Rodonich v. Senyshyn,* 52 F.3d 28, 34–35 (2nd Cir.1995) ("[T]he district court erred in concluding that failure to obtain equitable relief [in addition to monetary recovery] precludes an attorney's fee award [under the common benefit doctrine]."). Further, under the common benefit doctrine, "neither the presence nor absence of [the defendant's] 'bad faith' is in any sense dispositive," because the purpose of the doctrine is to spread the cost of litigation evenly among those who have benefited from it rather than to punish the defendant. *Hall,* 412 U.S. at 15, 93 S.Ct. at 1951.

■ Whether a plaintiff is entitled to an award of attorney's fees and expenses under the common benefit doctrine is, of course, left to the sound discretion of the district court. *Hall,* 412 U.S. at 15, 93 S.Ct. at 1951 (whether a plaintiff is entitled to an award of attorney's fees under the common benefit doctrine is "best addressed to the sound discretion of the District Court"); *Hayes v. International Org. of Masters, Mate & Pi-*

*lots,* 946 F.2d 885, 1991 WL 195722 at *4 (unpublished) (4th Cir.1991) (per curiam) (an award of attorney's fees under the common benefit doctrine "is subject to review for abuse of discretion") (*citing Hall,* 412 U.S. at 4, 93 S.Ct. at 1945–46); *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir.1983) ("An award of attorneys fees [under the common benefit doctrine] lies within the sound discretion of the district court."). As the Second Circuit succinctly stated in *Rodonich:*

> Whether or not a ... plaintiff deserves an attorney's fee award is a factual determination that rests squarely within the district court's discretion. This determination is fact specific, and is inherently a balancing of interests. In making this determination, the trial court should appraise the need for and potential benefits derived from the attorney's services, based on the judge's personal observation of counsel's performance and his intimate familiarity with the case.

52 F.3d at 33 (internal citations omitted).

With these guiding principles in mind, the Court will consider the Plaintiff's Motion for Attorney's Fees.

## II. THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Notwithstanding that the Court of Appeals reversed this Court's preliminary injunction and dismissed this action, the plaintiff-Names assert that this action has produced substantial benefits for all Names worldwide. In support of their quest for attorney's fees pursuant to the common benefit doctrine, the Names cite the following four benefits which are said to have resulted from their prosecution of this action:

(1) timely guidance on the important and disputed issue whether the Equitas interests that Lloyd's was offering to the Names were securities under the securities laws of the United States;

(2) a comprehensive judicial opinion from this Court, not reversed or disturbed by the Fourth Circuit, finding that the Names' original investments in Lloyd's pursuant to their General Undertakings are securities covered by the securities laws of the United States;

(3) a concession stipulated by Lloyd's in open court and in pleadings filed in this action that Lloyd's could be sued by any Name relying on the Settlement Offer Document for any fraudulent misrepresentations or omissions in that document, notwithstanding (i) the express disclaimers in that document, and (ii) the provisions of the Lloyd's Act of 1982; and

(4) an extension of the deadline for Names to accept Lloyd's R & R Plan which many American Names used to avail themselves of R & R.

Lloyd's contends that the Names are not entitled to an award under the common benefit doctrine because the Names did not prevail in this action. The Names assert that they need not be prevailing parties for the common benefit doctrine to apply.

### A. The Role of the "Prevailing Party" Concept in Application of the Common Benefit Doctrine

The Names are correct that the familiar standard for an award of attorney's fees and expenses under fee shifting statutes, such as 42 U.S.C. § 1988, which requires the plaintiff to be the "prevailing party," *see Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), is not strictly applicable under the common benefit doctrine. However, as the Supreme Court has explained, the doctrine applies—and the American Rule gives way—*only where, inter alia, "a plaintiff has successfully maintained a suit." Mills,* 396 U.S. at 392–93, 90 S.Ct. at 625–26 (emphasis added).

The Names assert that "no court has articulated ... a requirement" that a party must prevail in its action in order to collect attorney's fees under the common benefit doctrine. *See* Reply Memorandum In Support Of Plaintiff's Motion For Attorney's Fees at 5–6. That proposition is correct only insofar as the decisions tend not to enunciate explicitly success on the merits as a prerequisite for application of the common benefit doctrine. However, the Names' proposition ignores the fact that the decisions which framed the doctrine uniformly have involved successful parties and have linked entitle-

ment to fees to success in defining the exception.

For example, in *Mills,* the Supreme Court explicitly noted the presence of success. There, the Court commented that: "Awards have been sustained [under the common benefit doctrine] in suits by stockholders complaining that shares of their corporation had been issued wrongfully.... *A successful suit of this type* ... does benefit the holders of the remaining share by enhancing their value." 396 U.S. at 394, 90 S.Ct. at 626–27 (emphasis added). In *Hall v. Cole,* the Supreme Court observed that: "An[ ] established exception [to the American Rule] involves cases in which the *plaintiff's successful litigation* confers a substantial benefit on the members of an ascertainable class ...," 412 U.S. at 5, 93 S.Ct. at 1946 (emphasis added), and that "the rationale of these [common benefit] cases was ... to authorize an award of attorneys' fees *to a successful plaintiff* who, although suing on her own behalf rather than as representative of a class, nevertheless established the right of others to recover." *Id.* at 6 n. 7, 93 S.Ct. at 1946 n. 7 (emphasis added).

In *Brewer v. School Board of City of Norfolk,* our Court of Appeals explained that: "The most frequent exception [to the American Rule] occurs where a *plaintiff has successfully maintained a suit* ... that benefits a group of others in the same manner as himself and is ... one where through the complainant's efforts a fund is recovered in which others share." 456 F.2d at 948 (emphasis added) (*citing Mills,* 396 U.S. at 392, 90 S.Ct. at 625–26; *Sprague,* 307 U.S. at 166, 59 S.Ct. at 779–80). Other Courts of Appeals have taken the same approach in enunciating and applying the common benefit doctrine. The Second Circuit, in *Amalgamated Clothing v. Wal–Mart Stores, Inc.,* expressed a similar view: "The common-benefit rule permits *a prevailing party* to obtain reimbursement of attorney's fees in cases where the litigation has conferred a substantial benefit

on the members of an ascertainable class." 54 F.3d 69, 71 (2nd Cir.1995) (emphasis added); *see also Rodonich,* 52 F.3d at 31 (same). In *Johnson v. HUD,* the Eighth Circuit succinctly put the premise as follows: "*[A] prevailing party* cannot recover attorney's fees from *a losing party* absent express statutory authority or bad faith or unless the litigation involves a common fund or confers a substantial benefit on an ascertainable group." 939 F.2d 586, 590 (8th Cir.1991) (emphasis added). The Ninth Circuit took the same tack in *Southerland v. International Longshoremen's Union,* when it observed that: "The 'substantial benefit' principle is based on the premise that *a successful plaintiff* should be able to spread the costs of his litigation among those who benefited from the successful *outcome.*" 845 F.2d 796, 798 (9th Cir. 1988) (emphasis added); *see also Benda v. Grand Lodge of Int'l Assoc'n of Mach. & Aero. Wrks.,* 584 F.2d 308, 318 (9th Cir.1978) ("[U]nder the common benefit exception to the general American rule ... *[a]ttorney's fees are only awarded to the prevailing party.* In the case presently before us, we are unable to say that appellees are the prevailing party.") (emphasis added) (citations omitted); *accord Walker v. Teamsters Local No. 71,* 830 F.Supp. 291, 292 (W.D.N.C.1993) ("The rationale [for the common benefit doctrine] is that, *by prevailing,* the plaintiff has also accomplished a victory for the other members of the [ascertainable class].") (emphasis added).

◼ These authorities make clear that the unarticulated threshold requirement for application of the common benefit doctrine is that the claimant must enjoy some form of success on the merits of the litigation. Not surprisingly, then, in each of the cases cited by the Names, and in each case cited above, the plaintiffs who were awarded fees under the common benefit doctrine were successful, in whole or in part, in obtaining *some form* of judicial relief.[5] Thus, while, as the Names

---

5. *See, e.g. Mills,* 396 U.S. at 392–93, 90 S.Ct. at 625–26 (plaintiffs obtained disclosures under the proxy rules); *Amalgamated v. Wal–Mart,* 54 F.3d 69 (same); *Sprague,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (plaintiff prevailed in establishing her right to payment under the trusts in ques-

tion); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (plaintiff successful in proving that union's retaliatory action was impermissible under the union's rules); *Rodonich,* 52 F.3d 28 (same); *Longshoremen's & Warehousemen's Union, Local 8,* 845 F.2d 796 (9th Cir.1987) (same);

correctly observe, the common benefit doctrine can apply whether monetary or injunctive relief is received, they fail to appreciate that at least *some of the relief sought must ultimately be obtained, whether from the court or even through settlement.*

■ The Names did not prevail in any sense in this action. The only ruling in favor of the Names, this Court's granting of the preliminary injunction, was an interlocutory one which was vacated on appeal. The plaintiffs vigorously attempted to obtain further review of their cause in both the Fourth Circuit and the Supreme Court, to no avail. In the end, then, the Names were unsuccessful in obtaining the only relief they sought— information under the federal securities laws. *See Kollsman v. Cohen,* 996 F.2d 702, 706 (4th Cir.1993) ("[a] dismissal of an action whether on the merits or not, generally means the defendant is the prevailing party."). That failure is fatal to the Names' motion.

## B. The Benefits Allegedly Conferred

The Names argue, however, that "success" need not be measured solely by the relief obtained or by the ultimate disposition of a litigation, but that it may be determined by assessing the benefits conferred by developments during or after the litigation. Of course, that argument is a rather familiar one in litigation over "prevailing party" fee shifting provisions. Its most frequent embodiment is presented when a settlement is achieved after adverse rulings or the adversary makes a substantive concession.[6] Thus, if traditional success on the merits is not a

prerequisite to application of the common benefit doctrine, it becomes necessary to assess the benefits which the Names claim to have conferred.[7]

The benefits which the plaintiff-Names cite, however, are largely illusory and speculative, and they are far from the "substantial benefits" required to invoke the common benefit doctrine. First, the plaintiffs argue that they received, for all Names, "timely guidance" on the important and disputed issue whether the Equitas interests that Lloyd's was offering to the Names were securities under the securities laws of the United States, so that Names could properly evaluate the nature and status of the investment they were being offered. This argument converts the Fourth Circuit's adverse decision on the Names' substantive securities claim into a benefit for all Names. That is illogical because it is at odds with the fundamental meaning of the term "benefit."[8]

The Names' second contention is that this action conferred a "substantial benefit" on all Names because of this Court's Memorandum Opinion dated August 23, 1996. The plaintiffs argue that, because this Court's holding that the Names had raised a substantial question respecting whether their initial investments in Lloyd's were securities was not expressly reversed by the Fourth Circuit, the Names have gained "important protection." Plaintiff's Motion for Attorney's Fees at 15. It is correct that the Fourth Circuit expressly reserved judgment on that issue. However, the opinion makes clear that the Court of Appeals was not smitten with the Names'

*Hayes v. Int'l Org. of Masters,* 1991 WL 195722 (following entry of a preliminary injunction against defendant, plaintiff, through settlement, obtained what was sought in the litigation); *Brewer v. School Bd. of Norfolk,* 456 F.2d 943 (plaintiff secured right to free bussing for all students assigned to schools beyond walking distance from their homes).

6. *See, e.g. Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (fact that civil rights complainant prevailed through settlement rather than through litigation did not preclude her from claiming attorney's fees as "prevailing party" within meaning of § 1988); *Clark v. Township of Falls,* 890 F.2d 625 (3rd Cir.1989) (termination of claim by out-of-court settlement

does not preclude finding of causal connection between litigation and benefit obtained, or award of attorney fees under § 1988); *Williams v. Alioto,* 625 F.2d 845 (9th Cir.1980) (same).

7. Of course, to invoke the common benefit doctrine, a plaintiff must confer "substantial benefit" on an ascertainable class. Here, the alleged class of beneficiaries are all Names.

8. Under the plaintiff-Names' "timely guidance" theory, whenever an issue raised in litigation is resolved adversely, the losing litigant would earn attorney's fees simply for having learned that he was wrong. That, of course, is in complete derogation of the American Rule.

theory. The Fourth Circuit stated, in relevant part:

> We are ... unpersuaded by the Names' argument [] that their initial investment in Lloyd's pursuant to the General Undertaking is a security and that the Plan is, therefore, a solicitation for "consent or authorization is respect of a security" subject to § 14(a) of the 1934 Act.... Although the parties vigorously dispute whether the Names' initial investment in Lloyd's qualifies as an "equity security" within the meaning of the Act, we need not resolve that issue because the Plan does not "solicit ... any proxy or consent or authorization."

*Allen v. Lloyd's of London,* 94 F.3d at 931 (emphasis added).

Further, it is well-established that the legal findings made in the course of a motion for a preliminary injunction are not binding even in the proceeding in which they were made. *See University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *see also* 11A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2950 (1995) at 249 (preliminary injunction "decisions should not be used outside the context in which they were originally rendered."). Therefore, as a matter of law, this Court's preliminary ruling that the Names had a reasonable likelihood of prevailing on the merits that underwriting at Lloyd's constituted a security held little, if any, precedential weight even without the Fourth Circuit reversal. Thus, this Court's Memorandum Opinion is no longer a "substantial benefit" for the Names.[9]

Third, the Names assert that, through their effort in this litigation, Lloyd's conceded that it could be sued for fraudulent statements made in the Settlement Offer Document, thereby conferring significantly expanded rights upon all Names. It is true that, in testimony before this Court and subsequently in a written affidavit, David Sandler, Lloyd's CEO, made that concession, notwithstanding contrary language on the face of the Settlement Offer Document. The Court, doubting Sandler's authority to make such a statement, asked counsel to present the Court with a stipulation, officially authorized by Lloyd's, embodying Sandler's understanding. However, *no written stipulation was signed by or entered-into by the parties.* Thus, the legal effect of the concession by Lloyd's, through Sandler, remains uncertain.

That uncertainty assumes significance in assessing the claimed benefit of Lloyd's concession in this Court because, as shown by the documents published by Lloyd's in support of R & R, the English legal and regulatory systems, to date, have been generally ineffectual in providing recompense to those harmed by the pervasive and pernicious frauds which necessitated the restructuring of Lloyd's in the first instance. As the record here also makes clear, the Names have been unable to collect on the numerous judicial and arbitration awards they have secured on their claims against the companies and individuals in the Lloyd's system who committed, or were responsible for, the frauds perpetrated on the Names. Moreover, all efforts by Names in the English regulatory and judicial systems to forestall the effectiveness of R & R until the Names could secure vital information about the R & R Plan and its effect on the Names and their rights have been unsuccessful. Frustrated in their efforts to recover their losses, many Names refused, or were unable, to perform their insurance undertakings. Indeed, that was a principal reason why R & R became necessary. Also, at the date of the proceedings in this Court, no person who committed those frauds, or whose mismanagement allowed them to be committed and to remain undetected for so long, had been prosecuted criminally. The enforceability of Lloyd's concession in such a legal and regulatory climate is far from certain.

Indeed, the general inability of the Names to secure satisfaction of their claims in England and the steadfast refusal of authorities

---

9. The plaintiffs assert that this Court's Memorandum Opinion is a "substantial benefit" for all Names because it may become a "valuable weapon in the arsenal of the SEC or the state securities administrators" who, of course, are not precluded by Lloyd's forum selection clauses from raising legal challenges to Lloyd's conduct in the United States' courts. That, however, is purely speculative.

there to require that Lloyd's provide essential information about R & R to the Names were principal factors in the decision of this Court not to accord Sandler's concession significant weight in the injunction calculus unless Lloyd's first provided ironclad proof that Lloyd's regarded the concession of its CEO as binding. And, significantly, this Court's conclusion that the plaintiffs had shown irreparable injury in support of their preliminary injunction motion was based in part on the finding that the Names were being asked to waive "claims that documents which induced them to enter the R & R were fraudulent" and that *the Sandler affidavit "attempts to solve this problem, but it does not."* Allen v. Lloyd's of London, 1996 WL 490177 at *34 n. 15 (emphasis added).[10] Thus, this Court has concluded implicitly that Sandler's testimony and affidavit conferred upon the Names rights of uncertain efficacy.[11]

Finally, the Names argue that Lloyd's extension of the deadline for Names to accept the R & R Plan was a substantial benefit to all Names. However, Lloyd's unilateral decision to hold the settlement offer open until September 11, 1996 to permit Names who were awaiting the decision of this Court and the Fourth Circuit in this matter time to accept the R & R Plan was in no way attributable to any request or efforts by the Names. Importantly, the Fourth Circuit consistently has held that a defendant's unilateral and extra-judicial act cannot serve as the basis for a finding that the plaintiff was a "prevailing party" for purposes of the award-

ment of attorney's fees. *See Arvinger v. Baltimore*, 31 F.3d 196, 202–03 (4th Cir.1994) (rejecting "catalyst theory" of determining "prevailing party"); *S–1 & S–2 v. State Board of Education*, 21 F.3d 49 (4th Cir. 1994) (en banc) (same).

In sum, the benefits cited by the plaintiff-Names, as conferred on the class of all Names, because of the prosecution of this action are of such questionable and speculative efficacy that the Court declines to find that they constitute the "substantial benefit" required under *Mills* and its progeny. *See Mills*, 396 U.S. at 390–92, 90 S.Ct. at 625. Thus, the Court finds that this case is not an appropriate one in which to exercise its discretion to award the plaintiffs fees under the common benefit doctrine.[12]

For the reasons set forth in this Memorandum Opinion, the Plaintiff's Motion For Attorney's Fees is denied.

The Plaintiff's Request for Guidance on Representation Issue is denied as moot.

It is so ORDERED.

---

**10.** Moreover, both before this Court and the Fourth Circuit, the plaintiffs previously have stated their understanding that little, if any, benefit accrued to Names from Sandler's testimony and affidavit regarding the scope of the waiver provisions in the Settlement Offer Document.

**11.** It is especially noteworthy that Lloyd's brief on the attorneys' fees issue presents a serious question whether Lloyd's intends to honor elsewhere the assurances given to this Court by its CEO in an effort to ward off a preliminary injunction.

**12.** The plaintiffs also urge the Court to consider the Ninth Circuit's recent decision in *Richards v. Lloyd's of London*, 107 F.3d 1422, *petition for rehearing en banc pending* (9th Cir.1997), in connection with their motion for attorney's fees and expenses. In *Richards*, the Ninth Circuit held that Lloyd's "choice of forum" and "choice of

law" clauses in the General Undertakings, allegedly signed by all American Names, are unenforceable under the anti-waiver provisions of the United States securities laws. The Ninth Circuit's opinion employed an analysis similar to that used by this Court in its Memorandum Opinion and the Ninth Circuit reached the identical conclusion as did this Court respecting the effect of the anti-waiver provisions. There is no indication whatsoever, however, that the Ninth Circuit, in *Richards*, relied upon this Court's then-reversed Memorandum Opinion; most tellingly, the Memorandum Opinion is not cited in *Richards*. Moreover, the mere fact that a Court of Appeals came to the same conclusion as this Court does not constitute a "substantial benefit" to Names as a result of the Names' prosecution of *the instant action.* .